# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

Randy Johnson, *on behalf of himself*
*and others similarly situated*,

       Plaintiff,

v.                                      Case No. 1:15-cv-00716-LJM-MJD

Navient Solutions Inc.,
f/k/a Sallie Mae, Inc.

       Defendant.

# PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
# CLASS COUNSEL AND INCORPORATED MEMORANDUM OF LAW

**Request for Relief**

This straightforward case involves Navient Solutions Inc., f/k/a Sallie Mae, Inc.'s ("Navient") practice of continuing to robo-dial the cellular telephones of consumers across the country after being specifically informed that it was calling the wrong number. That is, Navient continued to autodial nearly half a million cellular telephone numbers even *after* notating in its system that the recipients of its calls advised Navient that it was calling the wrong person.

Because each of those persons—numbering at least 467,000—has a materially identical claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, class certification is proper. Accordingly, Randy Johnson respectfully requests that this Court certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint him as class representative, and appoint his counsel as class counsel.

Mr. Johnson respectfully requests that this Court certify the following class:

> Each person and entity throughout the United States (1) to whom Navient Solutions, Inc. placed one or more telephone calls (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) after the person or entity informed Navient that it was calling the wrong telephone number, (5) between May 4, 2011 and March 7, 2016.

**Statement of Relevant Facts**

**I.    Navient used an automatic telephone dialing system to place calls to at least 467,000 unique cellular telephone numbers after it added a wrong number designation to its own records for each of the telephone numbers.**

During the relevant class period, Navient[1] placed calls to at least 467,000 unique cellular telephone numbers, by using an automatic telephone dialing system ("ATDS")—either the "Noble

---

[1]    On October 13, 2014, Sallie Mae, Inc. split into two different entities: Navient and Sallie Mae. *See https://studentaid.ed.gov/sa/about/announcements/sallie-mae* ("Sallie Mae, a member of our federal loan servicer team, completed its transition into two separate companies—Navient and

System," the "GC dialer," or the "Interactive Intelligent System," *see* Transcript of Patricia Peterson's Deposition, attached as Exhibit A, at 17:7-18—after it added a wrong number designation to its records for each of those telephone numbers. *See id*. at 143:10-23 (Q. . . . If I'm understanding the 467,000-person figure that you provided—that NSI provided is an estimate of the number of people to whom Navient placed a call to a number after Navient's records for that number showed a wrong number code by using an automatic telephone dialing system; is that fair? A. Yes. . . . Q. Were the calls associated with the 467,000 people calls to cell phones only? A. Yes.).[2]

Navient did this despite its understanding that if a person informs one of Navient's agents that it reached a wrong number, Navient should stop placing calls to that number. *See* Ex. A at 54:4-8 (Q. So as I understand it, Navient's policy is that, if an individual tells an NSI agent that it's calling a wrong number, NSI shouldn't call that number anymore? A. Correct.). What's more,

---

Sallie Mae—on Oct. 13, 2014. . . . The new company, Navient, has assumed all the responsibilities performed by Salle Mae as a federal loan servicer."), last visited February 29, 2016.

[2]     As a result of discovery in this case, Navient identified approximately 467,000 accounts to which it placed an autodialed call to a cellular telephone *after* notating in its system that the call recipient informed Navient it was calling the wrong person. This 467,000 figure includes only telephone numbers for which Navient included a wrong number designation in its account records as a result of an *outbound* call that it made, as opposed to an *inbound* call it received from a person to inform it that it was calling the wrong number. *See* Ex. A at 169:7-10 ("A. So the way the 467— the approximate 467,000 was created was, we looked at outbound calls where we coded—where an agent put wrong number in that dialer status."). Stated otherwise, the 467,000 figure does not include telephone numbers for which Navient included a wrong number designation in its account records as a result of an inbound call—a call that a person placed to Navient to inform Navient that it was calling the wrong person. *See id*. Since the date of Ms. Peterson's deposition, however, Navient has agreed to provide "[t]he number of persons to whom Defendant made calls, directed to a number that Defendant's records indicate was assigned to a cellular telephone service, after a date on which Defendant's system included a wrong number code for the number called as a result of an inbound call made through one of Defendant's dialers, by using an automatic telephone dialing system or a predictive dialer or an artificial or prerecorded voice, for the period of time beginning on May 4, 2011 and ending on May 4, 2015." *See* Doc. 73 at 2. This means that it is likely that significantly more than 467,000 accounts will reflect autodialed calls to cell phones after the entry of a wrong number designation.

Navient acknowledged that a person's statement that Navient reached a wrong number means that the person does not want to be called at that number. *See id.* at 54:4-24 (Q. So as I understand it, Navient's policy is that, if an individual tells an NSI agent that it's calling a wrong number, NSI shouldn't call that number anymore? A. Correct. Q. Why? . . . THE WITNESS: Because the person on that call said the number doesn't belong to the person they're trying to reach. BY MR. RADBIL: Q. And because the person said the number doesn't belong to the person they're trying to reach, they simply don't want to be called anymore? A. They—yes.).

II.   **Navient repeatedly placed calls to Mr. Johnson's cellular telephone number after he informed Navient it was calling the wrong number, and after Navient included a wrong number designation in its own records for his cellular telephone number.**

In September 2014, Navient began placing calls to Mr. Johnson's cellular telephone number by using an ATDS. *See* NSI0007385-86, attached as Exhibit B; NSI0007387-88, attached Exhibit C; NSI 0007390-91, attached as Exhibit D.[3] Shortly thereafter, Mr. Johnson called Navient and notified one of its agents that his telephone number did not belong to the person that Navient intended to reach—a woman named Marie Bottoms. During this conversation Navient agreed to remove Mr. Johnson's cellular telephone number from its system.[4] However, Navient's calls continued.

Subsequently, Mr. Johnson called Navient and informed one of its agents that Navient continued to place calls to his telephone number despite his previous requests that Navient not do so. During this conversation Navient not only agreed to remove Mr. Johnson's cellular telephone

---

[3]   While these documents were marked "confidential" when produced, Navient has agreed to de-designate the documents for purposes of this filing, with Mr. Johnson's cellular phone number redacted in part.

[4]   Consistent with its policy, Navient recorded this conversation with Mr. Johnson. Should this Court desire to listen to the recording, Mr. Johnson will submit it under seal.

number from its system, but also assured Mr. Johnson that he would not receive any more calls from Navient.[5]

In line with Mr. Johnson's conversations with Navient, Navient included a wrong number designation in its account records for Mr. Johnson's cellular telephone number on three separate occasions. *See* Ex. B ("9/11/2014 . . . Inbound . . . Wrong #[;] . . . 10/21/2014 . . . Inbound . . . Wrong #[;] . . . 12/4/2014 . . . Inbound . . . Wrong #"); Ex. D ("9/1/2014 WN").

No matter, Navient repeatedly placed calls to Mr. Johnson's cellular telephone number, by using an ATDS, *after* Mr. Johnson informed Navient that it was calling the wrong number (and after the date on which Navient's own records included a wrong number designation for his telephone number). *See* Ex. A at 171:14-19 (Q. You would agree with me that Mr. Johnson received a call by an autodialer from NSI on his cell phone after a wrong number code was entered in the system for his cellular telephone number, right? A. Yes.); *id*. at 32:4-23 (noting that Navient made and received the calls listed at rows two through five, eleven through eighteen, and sixty-six through sixty-seven of Exhibit B—all but two of which occurred after Navient first included a wrong number designation in its account records for Mr. Johnson's cellular telephone number); *id*. at 127:2-5 (confirming that the calls listed on Exhibit C are different from the calls listed on Exhibit B); *id.* at 127:23-25; 128:1 (explaining that Navient made each of the fifty outgoing calls to Mr. Johnson's cellular telephone number listed on Exhibit D—all of which Navient placed after it first included a wrong number designation in its account records for Mr. Johnson's cellular telephone number).

---

[5]     Navient also recorded this conversation with Mr. Johnson. Should this Court desire to listen to the recording, Mr. Johnson will submit it under seal as well.

And Navient did so despite that Mr. Johnson never had a business relationship with it. *See* Ex. A at 34:7-13 (Q. . . . Does NSI have any relationship with Randy Johnson who is the plaintiff in this lawsuit? A. No. Q. Did NSI ever have any relationship with Randy Johnson, the plaintiff in this lawsuit? A. Not that I'm aware of.); *accord* Ex. B (recording of conversation during which Mr. Johnson states that he never went to college, let alone took out a loan to attend college).[6]

Moreover, at no point did Navient ever obtain, or even attempt to obtain, permission from Mr. Johnson to place calls to his cellular telephone number by using and ATDS. *See id*. at 34:17-25; 35:1 (Q. Did Navient ever obtain Mr. Johnson's consent to use 317.***.2476? A. Navient Solutions? Q. Yes. A. No. Q. Did Navient solutions ever attempt to obtain Mr. Johnson's consent to make autodialed predictive outcalls or artificial voice calls to 317.***.2476? A. No, not that I know of.).

In fact, Navient conceded that it never even intended to reach Mr. Johnson when placing calls to his cellular telephone number. *See id*. at 38:1-7 (Q. Okay. Who was NSI attempting to reach when it made the calls to [Mr. Johnson's cell phone number]? A. Marie Bottoms. Q. Was it ever attempting to reach anyone other than Marie Bottoms when making calls to [Mr. Johnson's cell phone number]? A. No.).

### III. Navient obtained Mr. Johnson's cellular telephone number from a third party.

It appears that Navient obtained Mr. Johnson's telephone number during an April 18, 2014 conversation with Marie Bottoms. Specifically, early in the more than nine-minute conversation between Navient and Ms. Bottoms, Navient confirmed Ms. Bottom's telephone number as (317)

---

[6]    Navient is the nation's leading loan management, servicing and asset recovery company, servicing more than $300 billion in student loans. *See* Navient Solutions Inc., Annual Report (Form 10-K), at 4 (Feb. 25, 2016)
*See* https://investor.shareholder.com/navi/secfiling.cfm?filingID=1193125-16-478393&CIK=159538 (last visited March 7, 2016).

***-7570—a number different than Mr. Johnson's cellular telephone number. Near the end of the conversation Navient asked Ms. Bottoms if it could use the number on which she called Navient: "NAVIENT: . . . And we have your phone number, did you want to add an alternative number to the account. MS. BOTTOMS: Um, you can take this one. NAVIENT: Okay, what is this one? MS. BOTTOMS: I really don't know it, I'm just calling on it. NAVIENT: It's the one that we have, the one that you're calling from, okay, its (317) ***-2476."[7]

Notably, after this conversation between Navient and Ms. Bottoms, Navient did nothing to confirm that Mr. Johnson's cellular telephone number was a telephone number that belonged to Ms. Bottoms. *See* Ex. A at 69:18-22 (Q. . . . After that conversation between Ms. Bottoms and NSI, did NSI do anything to confirm that 317.***.2476 was, in fact, a number that belonged to Ms. Bottoms? A. No.).

Also worth mentioning, Ms. Bottoms used Mr. Johnson's cellular telephone number to call Navient (unbeknownst to Mr. Johnson) while she stayed with Mr. Johnson for a few weeks to avoid her abusive ex-husband. *See* Transcript of Randy Johnson's Deposition, attached as Exhibit E, at 22:14-21 ("She just really needed a place to – a place of refuge."). And although Mr. Johnson allowed Ms. Bottoms to use his cellular telephone on occasion, he neither knew that Ms. Bottoms used his cellular telephone to call Navient, nor was he even aware that Ms. Bottoms owed money toward a student loan debt, until he started to receive calls from Navient looking for Ms. Bottoms. *See* Ex. E at 24:14-17 (Q Do you have an understanding that Ms. Bottoms has outstanding student loans? A I didn't know it until I started getting calls from Navient/Sallie Mae.).

---

[7]      Navient recorded this conversation with Ms. Bottoms. Should this Court desire to listen to the recording, Mr. Johnson will submit it under seal.

Notwithstanding, that Navient apparently captured Mr. Johnson's cellular telephone number from a caller identification device and then asked Ms. Bottoms if it could reach her at Mr. Johnson's number, cannot change the fact that Navient repeatedly placed calls to Mr. Johnson's cellular telephone number, by using an ATDS, *after* Mr. Johnson specifically informed Navient that it was calling the wrong number and directed Navient not to do so on more than one occasion (as reflected not just in Navient's own records, but in the recordings of its conversations with Mr. Johnson). Indeed, and like all other members of the proposed class, Navient continued calling Mr. Johnson after being specifically informed that it was calling the wrong number.[8]

## Standard

To certify his proposed class, Mr. Johnson must satisfy each of the four requirements of Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy of representation, as well as one of the requirements of Rule 23(b). *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015);[9] *Johnson v. Yahoo!, Inc.*, Nos. 14 CV 2028, 14 CV 2753, 2016 WL 25711, at *1 (N.D. Ill. Jan. 4, 2016) (certifying TCPA class action); *Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, No. 15-120, 2015 WL 9478548, at *1-2

---

[8]     That Navient made calls to Mr. Johnson's cellular telephone number—as well as at least 467,000 other unique cellular telephone numbers—by using an ATDS, after its own records included a wrong number designation for his cellular telephone number, is likely the result of the manner in which Navient's systems function. In particular, Navient's inclusion of a wrong number designation in one of its dialer systems for a particular telephone number simply stops Navient from placing calls to that telephone number for the day on which the designation is entered. It does not prevent Navient from using an ATDS to make calls to the number at issue for any day following the day on which the wrong number designation is entered. *See* Ex. A at 44:17-25; 45:1-6 (Q. . . .When you say wrong number code is put on the dialer, is that what happened here, this wrong number code was put on the dialer? A. Yes. Q. And the wrong number code put on the dialer stops calls for that day? A. Yes. Q. Does it do anything except stop calls for that day? A. When put on the dialer, no. Q. So the calls would continue the next day despite the wrong number code being entered on the system? A. Unless they also updated the system of record as a wrong number.).

[9]     Internal quotations and citations are omitted and emphasis is added, unless otherwise noted.

(N.D. Ind. Dec. 29, 2015) (certifying class action).

In reviewing a motion for class certification, the court "must make whatever factual and legal inquiries necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The court's decision whether to certify a class, however, is not to be based on a preliminary assessment of the ultimate merits of the plaintiff's claims. *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("nothing in either the language or the history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"). Rather, the necessary preliminary inquiry is into the merits of any allegations that bear on the suitability of a case under Rule 23(a) and (b). *Sanchez v. Roka Akor Chicago LLC*, No. 14-cv-4645, 2016 WL 74668, at *2 (N.D Ill. Jan. 7, 2016).

So while the district court's class certification analysis may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194 (2013). Nonetheless, in the end, the court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011).

I.   **Mr. Johnson's claims are well-suited for class action treatment.**

The TCPA makes it unlawful to place any telephone call, other than for emergency purposes or with the prior express consent of the called party, using an ATDS, to any telephone number assigned to, *inter alia*, a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). As Judge

Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

This is especially true in cases, like here, where courts do not have to inquire as to whether each putative class member may be subject to an independent consent defense. *See, e.g.*, *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 312 (S.D. Cal. 2015) (certifying TCPA class action); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (same); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013) (same). Indeed, to be a member of Mr. Johnson's proposed class, a person need only have received an autodialed call on his or her cellular telephone from Navient after informing Navient that it was calling the wrong person.

## II.    Mr. Johnson satisfies the requirements of Rule 23(a).

### A. Mr. Johnson's proposed class is so numerous that joinder of all members is impracticable.

Rule 23(a) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility, but instead requires plaintiffs to prove that it would be inconvenient and difficult to join all proposed members of the class." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 421 (N.D. Ill. 2003) (quoting *Bethards v. Bard Access Sys., Inc.*, No. 07 C 3659, 1995 WL 75356, at *3 (N.D. Ill. 1995)).

Accordingly, a plaintiff is not required to specify the exact number of persons in the class to satisfy the numerosity prerequisite. *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (citing *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978)).

Here, discovery shows that Navient placed calls to at least 467,000 unique cellular telephone numbers, by using an ATDS, after its own records included a wrong number designation

for each of the telephone numbers. *See* Ex. A at 143:10-23. Therefore, as Mr. Johnson's proposed class amounts to at least 467,000 persons (and likely more), it is so numerous that joinder is impracticable. *See Johnson*, 2016 WL 25711, at *3 (finding numerosity satisfied where the class could contain more than 500,000 persons); *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 296-97 (S.D. Ind. 2013) (finding numerosity satisfied where the class was estimated to be 273 persons); *Ind. Prot. and Advocacy Servs. Comm'n v. Comm'r, Ind. Dept. of Corr.*, No. 1:08–cv–01317–RLY–JMS, 2010 WL 1737821, at *1 (S.D. Ind. Apr. 27, 2010) (finding numerosity satisfied where the class was estimated to be in the "hundreds"); *Dubinski v. Sentry Ins. A Mut. Co.,* No. 1:14–cv–00551–TWP–DKL, 2015 WL 540523, at *2 (finding numerosity satisfied where the class was made up of over 1,200 persons).

Indeed, Navient does not contest the element of numerosity for purposes of this matter. *See* Navient's Response to Mr. Johnson's Interrogatory No. 14, attached as Exhibit F ("Further, for purposes of this action only, NSI does not contest the element of numerosity under Rule 23 of the Federal Rules of Civil Procedure."). Mr. Johnson therefore satisfies the numerosity element of Rule 23.

## B. Questions of law and fact are common to all members of the proposed class.

Rule 23(a)(2) requires the existence of common questions of law or fact. A common question is one such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015).

"The test for commonality is not demanding." *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 426 (5th Cir.1997), *cert. denied*, 522 U.S. 1052 (1998). To satisfy the commonality element, it is enough for a plaintiff to present just one common claim. *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2556 (2011). A class action is appropriate in situations where the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 99 S.Ct. 2545, 2257 (1979). Litigating such cases as a class, as opposed to individually, saves the resources of the courts and the parties by deciding similar issues that affect all class members. *Id.*

While "[c]lass certification cannot be defeated simply because there are some factual variances among the proposed members," *Chapman*, 2015 WL 9478548, at *3, the questions of fact and law at issue here are entirely common. Specifically, the claims asserted by Mr. Johnson and the members of his proposed class all originate from the same conduct on the part of Navient—namely, its use of an ATDS to place calls to telephone numbers after being informed that the numbers to which it placed the calls were wrong numbers.

Thus, if brought and prosecuted individually, the claims of each member of Mr. Johnson's proposed class would require proof of the same material and substantive facts, including Navient's actions and whether the systems it uses to place calls constitute an ATDS as defined by the TCPA. *See Abdeljalil*, 306 F.R.D. at 309 (finding commonality element satisfied where the defendant called third parties on their cellular telephones via an ATDS and/or prerecorded voice without prior express consent after the defendant was on notice that it was calling a third party); *Johnson*, 2016 WL 25711, at *3 ("Defendant does not argue that numerosity or commonality is missing. And plaintiffs make a sufficient showing that both are met—the proposed class could contain more than 500,000 members, for whom common questions would include, among others, whether the PC2SMS platform constitutes an 'automatic telephone dialing system.' These two factors under Rule 23(a) are therefore satisfied.").

Moreover, Navient testified that a wrong number designation in its records evidences that the person at the number in question did not want to be called. *See* Ex. A at 54:4-24. Thus, whether informing Navient that it was calling the wrong number demonstrates a lack of consent to make a future autodialed calls to respective cellular telephone numbers is also a question of law common to all members of Mr. Johnson's proposed class. *See Manno*, 289 F.R.D. at 686 ("Whether the provision of a phone number on admissions paperwork equates to express consent is a question common to all class members, because all class members filled out paperwork at the time of treatment. On this defense, all class members will prevail or lose together, making this another common issue to the class.").

As well, there is a common injury among the members of Mr. Johnson's proposed class resulting from receipt of the violative telephone calls at issue. *Birchmeier*, 302 F.R.D. at 251 ("Those who are members of one of the proposed classes by definition received the same calls . . . made by or for one of the defendants, using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question. . . . Here there is a common injury, resulting from receipt of the allegedly offending calls[.]"). As a result, Mr. Johnson satisfies the commonality element of Rule 23.

**C.  Mr. Johnson's claims are typical of the claims of the members of his proposed class.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims.

*See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). An individual's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, Mr. Johnson and members of his proposed class suffered from a common practice employed by Navient—its use of an ATDS to call cellular telephones after being specifically informed that those cellular telephone numbers were wrong numbers. As set forth above, Mr. Johnson unquestionably is a member of his proposed class, as Navient concedes. *See* Ex. A at 171:14-19 (Q. … You would agree with me that Mr. Johnson received a call by an autodialer from NSI on his cell phone after a wrong number code was entered in the system for his cellular telephone number, right? A. Yes.).

Thus, Mr. Johnson's claims are typical of those of the members of the proposed class that he seeks to represent. *See, e.g.*, *Johnson*, 2016 WL 25711, at *6 (finding typicality was satisfied in class action under TCPA over autodialed phone calls to cellular telephones); *Abdeljalil*, 306 F.R.D. at 309 (same); *Birchmeier*, 302 F.R.D. at 251 (same); *Manno*, 289 F.R.D. at 686-87 (same).

**D. Mr. Johnson, and his counsel, will fairly and adequately protect the interests of the members of his proposed class.**

Rule 23(a)(4) requires that the representative plaintiff fairly and adequately protect the interests of the class. "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class' myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Here, Mr. Johnson is firmly committed to this case and will fairly and adequately protect class members' interests in this matter, as he has done to date. *See* Ex. E at 24:2-6, 25:19-23. Indeed, Mr. Johnson has been an active participant in this case who has read all pertinent filings, conducted independent research, and sat for a deposition. *Id*. at 25:19-25, 26:1-21 (Q Have you read any of the pleadings related to this case? A Yes, I have. I have read up on the Telephone Consumer Protection Act that was enacted by Congress in 1991. Q Okay. What else? A I've read Navient's motion to stay this case, which was denied by the judge. I've read the original complaint filled out by these gentlemen. And I've read the expert report from the outside counsel that they hired to collect data, I think, on the number of calls, not just from me, but other people in the country. I've read pretty much everything that's been available for me to read.).

As well, Mr. Johnson has retained counsel experienced and competent in class action litigation, including class action litigation under the TCPA. *See, e.g.*, *Prater v. Medicredit, Inc.*, No. 4:14-cv-00159-ERW, 2015 WL 8331602, at *2 (E.D. Mo. Dec. 7, 2015); *Jones v. I.Q. Data Int'l, Inc.*, Case No. 1:14-cv-00130-PJK-RHS, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015); *Ritchie v. Van Ru Credit Corp.*, No. 2:12–CV–01714–PHX–SM, 2014 WL 3955268, at *2 (D. Ariz. Aug. 13, 2014).[10] Mr. Johnson's counsel will vigorously pursue this matter—as it has to

---

[10]     Greenwald Davidson Radbil PLLC has been appointed class counsel in more than a dozen consumer protection class actions in the past two years. *See, e.g.*, *Roundtree v. Bush Ross, P.A.*, No. 14-357, 2016 WL 360721, at *2 (M.D. Fla. Jan. 28, 2016); *Schuchardt v. Law Office of Rory W. Clark*, No. 15-01329, 2016 WL 232435, at *6 (N.D. Cal. Jan. 20, 2016); *Kemper v. Andreu, Palma & Andreu, PL*, No. 15-21226, Doc. 36 (S.D. Fla. Jan. 11, 2016); *Whitford v. Weber & Olcese, P.L.C.*, No. 15-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016); *Chapman*, 2015 WL 9478548, at *4 (DeGuilio, J.); *Garza v. Mitchell Rubenstein & Assocs., P.C.*, No. 15-1572, 2015 WL 9594286, at *1 (D. Md. Dec. 28, 2015); *Baldwin v. Glasser & Glasser, P.L.C.*, No. 15-00490, 2015 WL 7769207, at *1 (E.D. Va. Dec. 1, 2015); *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337, 340 (S.D. Miss. 2015); *Oaks v. Parker L. Moss, P.C.*, No. 3:15-CV-00196-CAN, 2015 WL 5737595, at *1 (N.D. Ind. Sept. 29, 2015); *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14-24502, 14-20933, 2015 WL 738329, at *2 (S.D. Fla. Feb. 23, 2015).

date—and will assert, protect, and otherwise represent the members of Mr. Johnson's proposed class. As a result, Mr. Johnson satisfies Rule 23(a)(4) and 23(g).

### III.   Mr. Johnson satisfies the requirements of Rule 23(b).

#### A.   The questions of law and fact common to the members of Mr. Johnson's proposed class predominate over any questions affecting only individual class members.

"Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members 'predominate' over questions that are individual to members of the class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814-15 (7th Cir. 2012). "There is no mathematical or mechanical test for evaluating predominance." *Id.* (citing 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). The Supreme Court has explained that the Rule 23(b)(3) "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 117 S.Ct. 2231, 2236 (1997).

Here, the principal legal issue before this Court is whether Navient's automated calls to the members of Mr. Johnson's proposed class violated the TCPA. Significantly, Navient admits that it called hundreds of thousands of unique cellular telephone numbers using an ATDS even though recipients of the calls previously informed Navient that it was calling the wrong number. *See* Ex. A at 143:10-17. Navient also admits that if an individual tells one if its agents that Navient is calling the wrong number, Navient should not call that number again. *See id.* at 54:4-24. And Navient further concedes that a person's statement that Navient reached a wrong number means that the person does not want to be called at that number. *See id.*

Given, therefore, Navient's acknowledgement that a person who informs it that it is calling the wrong number no longer consents to be called by Navient, there are no individualized issues

that will predominate over issues common to the members of Mr. Johnson's proposed class.[11] *See*

*Meyer v. Portfolio Recovery Assocs., LLC.*, 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming grant

of provisional certification of TCPA class and finding that, given the record, "it was reasonable

for the district court to find that cellular telephone numbers obtained via skip-tracing [from a third

party] had not been given to the creditors in the course of the underlying consumer transactions.");

*Balbarin v. North Star*, No. 10 C 1846, 2011 WL 211013, at *1 (N.D. Ill. Jan. 21, 2011) (denying

motion for reconsideration on class certification because the court "tailored the class so that it

would capture those individuals whose numbers were obtained through defendant's routine use of

third party information providers, but exclude[d] individuals who provided their numbers to either

defendant or the original debtor. The possibility that some putative class members might ultimately

be found to be outside the class does not preclude class certification."); *Manno*, 289 F.R.D. at 689

("Common questions of law and fact predominate here because, as explained above, any persons

who may have been subject to an individualized consent defense were excluded during numerosity

discovery.").

     As a result, Mr. Johnson satisfies the predominance element of Rule 23. *See Johnson*, 2016

WL 25711, at *6-8 (finding that plaintiffs demonstrated that common issues would predominate

in proposed TCPA class); *Birchmeier*, 302 F.R.D. at 253-54 (same).

---

[11]    As an aside, Navient tracks, historically, the dates on which it had consent to place calls, by using an ATDS, to telephone numbers included in is system, and the dates on which it did not have consent to do so. *See* Ex. A at 154:23-25, 155:4-21 (Q. Does NSI keep track of changes to consent to call by autodialer for specific numbers? A. Yes. . . . Q. So if I asked you for a given number, the dates that Navient had consent and didn't have consent for, let's say the period of the past five years, it could tell me, assuming there were changes, NSI had consent for this period of time and didn't have consent for a different period of time? A. Assuming we were tracking it that full time, yes. Q. Yes. But the way the system functions is when consent changes, old consent notations aren't simply deleted. Navient is able to go back and say consent existed for a period of time and didn't exist for a period of time, assuming that's the case? A. Yes.).

**B. A class action is superior to other available methods for the fair and efficient adjudication of this matter.**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider the following: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Proceeding with TCPA claims as a class generally is superior to the litigation of the same issues in successive individual lawsuits. *See, e.g.*, *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012) (citing *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. 2009); *Hinman v. M & M Rental Cntr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008)). To be sure, the resolution of TCPA claims "on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources." *Green*, 2009 WL 1810769, at *3. Indeed, resolving TCPA claims in a class action entails not only an efficient use of judicial resources, but also of party resources. *Hinman*, 545 F. Supp. 2d at 807. It allows for the resolution of claims that otherwise might never be brought because of their relatively small individual value. *Id.*

Here, no one member of the class that Mr. Johnson seeks to represent has an interest in controlling the prosecution of the action because the claims of all members of Mr. Johnson's proposed class are identical, as the allegations involve standardized conduct. Moreover, alternatives to a class action are either no recourse for hundreds of thousands of class members, or

a multiplicity of suits resulting in inefficient administration of justice. *See Mullins*, 795 F.3d 654 at 658 ("A court must consider 'the likely difficulties in managing a class action,' but in doing so it must balance countervailing interests to decide whether a class action 'is superior to other available methods for fairly and efficiently adjudicating the controversy.'"). In fact, absent a class action, a great many claims identical to those asserted by Mr. Johnson likely will go unaddressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against Beachwood, which makes a class action the superior mechanism for adjudicating this dispute."); *Abdeljalil*, 306 F.R.D. at 312 ("This Court finds this case, in which 'damages suffered by each putative class member are not large,' is appropriate for class certification.").

As Mr. Johnson explained at his deposition, a class action is the only way to effectuate meaningful change in Navient's business practices:

> Q. Aside from what you've already told me, what do you hope to accomplish in this case, if anything?
>
> A Number one, is to stop this practice of harassing people on the phone. That's the number one. And I know that the only way that I'm probably going to be able to accomplish this is to cost this company a whole lot of money. They're just going to keep doing it as long as nobody is going to say anything. As long as nobody says anything or does anything, Navient Solutions will continue breaking the law.

Ex. E at 35:21-25, 36:1-6.

Additionally, there are unlikely to be serious difficulties in the management of this case as a class action.[12] Indeed, Navient already has in its possession each cellular telephone number—as

---

[12]     Even if manageability concerns did exist—they do not—failure to certify a class action under Rule 23(b)(3) solely on manageability grounds is disfavored. *See Mullins*, 795 F.3d at 663-64 ("[B]efore refusing to certify a class that meets the requirements of Rule 23(a), the district court should consider the alternatives as Rule 23(b)(3) instructs rather than denying certification because

well as the names it associates with each number—that it called using an ATDS during the class period, including those that it called after it placed a wrong number designation in its records with regard to that particular cellular telephone number. *See* Ex. A at 150:1-9, 151:23-25, 152:1-12. Based on that information, the names and addresses of the individuals associated with those cellular telephone numbers can be identified in a practical and efficient manner. *See* Declaration of Anya Verkhovskaya, attached as Exhibit G.

For these reasons, a class action is the superior method to adjudicate this controversy. *Birchmeier*, 302 F.R.D. at 254 (rejecting argument that class was not manageable because it would allegedly be either impossible, or costly and onerous, to obtain the identities of the subscribers for the phone numbers of 930,000 proposed class members); *accord Mullins*, 795 F.3d 654, 665 ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. When that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process.").

## IV.   Mr. Johnson's proposed class is ascertainable.

In the Seventh Circuit, there is no "heightened" ascertainability requirement. *Mullins*, 795 F.3d at 658 ("We decline to follow this path and will stick with our settled law. Nothing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3), which has the effect of

---

it may be challenging to identify particular class members. District courts have considerable experience with and flexibility in engineering solutions to difficult problems of case management. In addition, a district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation. . . . Under this comparative framework, refusing to certify on manageability grounds alone should be the last resort.").

skewing the balance that district courts must strike when deciding whether to certify classes.").[13] That is, at the certification stage, a plaintiff need not prove there is a reliable and administratively feasible way to identify all class members who fall within the class definition. *Id.* at 657-58; *see also Beley v. City of Chicago*, No. 12 C 9714, 2015 WL 8153377, at *3 (N.D. Ill. Dec. 7, 2015) ("*Mullins* teaches that the concerns underlying Defendant's argument (that is, creating a reliable and administratively feasible way to determine whether a particular person is a class member) may be valid, but they should be addressed through tailored case management and not by denying class certification at the outset.").

Rather, an ascertainable class is simply one where the class definition is based on objective criteria. *Mullins*, 795 F.3d at 659 (explaining that the "implicit requirement of ascertainability" is to be focused on "the adequacy of the class definition itself" and *not* "on whether, given an adequate class definition, it would be difficult to identify particular members of the class."). As a result, to show that a class is ascertainable, a plaintiff must simply present a class definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Johnson*, 2016 WL 25711, at *2 (citing *Mullins*, 795 F.3d at 659-60 (7th Cir. 2015)); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) ("The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable.").

Mr. Johnson's proposed class meets each of these requirements. In particular, his class definition precisely identifies a particular group of individuals in a particularized way (each person and entity who Navient called using an ATDS on their cellular telephone after that person or entity

---

[13]     Just days ago, on February 29, 2016, the Supreme Court denied the petition for writ of certiorari filed in connection with this matter. *See Direct Digital, LLC v. Mullins*, No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) ("The petition for writ of certiorari is denied.").

informed Navient that it was calling the wrong telephone number), during a specific period of time (from May 4, 2011 through March 7, 2016), in a specific location (the United States). *See Johnson*, 2016 WL 25711, at *2 (finding ascertainability satisfied where the plaintiff defined the class by reference to objective criteria); *Suchanek v. Sturm Foods, Inc.*, No. 311 F.R.D. 239, 260 (S.D. Ill. 2015) (same); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 66 (E.D.N.Y. 2015) (same).

As well, Mr. Johnson's class definition is not a proscribed fail-safe class because whether a person is a member of his proposed class does not depend on whether the person has a valid TCPA claim. *Mullins*, 795 F.3d at 660 ("The key to avoiding [the problem of a fail-safe class] is to define the class so that membership does not depend on the liability of the defendant."). As a result, Mr. Johnson's proposed class is ascertainable. *See Abdeljalil*, 306 F.R.D. at 309 (finding proposed class of persons who allegedly received wrong number calls to be ascertainable).

## Conclusion

Mr. Johnson respectfully requests that this Court grant his motion for class certification and appointment of class counsel, approve him as the class representative, and appoint Greenwald Davidson Radbil PLLC as class counsel.

Date: March 7, 2016                    Respectfully Submitted,


                                       *s/ Aaron D. Radbil*
                                       Aaron D. Radbil
                                       Greenwald Davidson Radbil PLLC
                                       106 East Sixth Street, Suite 913
                                       Austin, Texas 78701
                                       Phone: (512) 322-3912
                                       Fax: (561) 961-5684
                                       aradbil@gdrlawfirm.com

                                       *s/ Michael L. Greenwald*
                                       Michael L. Greenwald
                                       Jesse S. Johnson (*pro hac vice*)
                                       Greenwald Davidson Radbil PLLC
                                       5550 Glades Road, Suite 500
                                       Boca Raton, Florida 33431
                                       Tel: (561) 826-5477
                                       Fax: (561) 961-5684
                                       mgreenwald@gdrlawfirm.com
                                       jjohnson@gdrlawfirm.com


### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed on March 7, 2016, via the

Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

                                       /s/ Michael L. Greenwald
                                       Michael L. Greenwald