# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

Randy Johnson, *on behalf of himself*
*and others similarly situated*,

        Plaintiff,

v.                                                                  Case No. 1:15-cv-00716-LJM-MJD

Navient Solutions Inc.,
f/k/a Sallie Mae, Inc.

        Defendant.

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS COUNSEL**

## Introduction

Subsequent to the date on which it filed its response to Mr. Johnson's motion for class certification, Navient served answers to three of Mr. Johnson's discovery requests. *See* Defendant's July 5, 2016 answers to Plaintiff's discovery requests, attached as Exhibit A. Through its answers Navient estimates that it used an ATDS to place 9,688,533 calls to approximately 276,877 telephone numbers—all of which Navient's records indicate were assigned to a cellular telephone service—*after a date on which Navient's system included a wrong number code for each of the telephone numbers*.

Against this backdrop, Navient contends that this Court should not certify Mr. Johnson's proposed class—including at least 276,877 individuals to whom Navient placed more than 9.6 million calls, by using an ATDS, after its own records designated each of the telephone numbers at issue as wrong numbers—because class certification is ostensibly not in the best interest of class members. For example, Navient suggests that Mr. Johnson will not adequately represent his proposed class, and that a class action is not superior to other available means for the fair and efficient adjudication of this matter.

But notwithstanding that Navient's arguments are without merit, this Court should be suspicious of Navient's attempt to play the role of the proverbial fox guarding the henhouse. *See Kline v. Wolf*, 702 F.2d 400, 402 (2d Cir. 1983) ("[A] court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation[.]"); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 410-11 (D. Mass. 2007) ("The court is aware that Defendants are playing the role of the proverbial fox guarding the henhouse. Courts have recognized that defendants often seek to cast aspersions on the adequacy of class representatives and counsel while truly seeking to have no class certified at all.").

## Argument

### I.   Mr. Johnson's proposed class is so numerous that joinder of all members is impracticable.

Navient explains that "since the filing of the Motion, NSI has discovered that its original estimate of the number of persons to whom calls were made after a wrong number designation was too high." Doc. 100 at 13. Navient then notes that "the revised estimate is 276,877 (including the inbound calls that Johnson places at issue in footnote 2 of the Motion)." *Id.* Navient does not, however, dispute that Mr. Johnson's proposed class—which has more than 275,000 members—is so numerous that joinder of all members is impracticable.

### II.   Questions of law and fact are common to the members of Mr. Johnson's proposed class.

Although Navient contends that common questions of law and fact do not predominate over individual issues in this matter, *see infra*, Section V, Navient does not specifically contest that questions of law and fact are common to all members of Mr. Johnson's class. *See* Doc. 100 at 21-24. And as Mr. Johnson explains through his motion for class certification, questions of law and fact are, indeed, common to all class members. *See* Doc. 75 at 11-13; *accord Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("The proposed class also satisfies commonality . . . . Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) ("Here, the proposed class members' claims stem from the same factual circumstances, in that the calls were made by Wells Fargo to class members . . . using auto-dialing equipment or with a prerecorded voice message. There are also several common questions of law, including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells Fargo willfully or

knowingly violated the TCPA; and (3) whether Wells Fargo had 'prior express consent' for the calls."); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 4155361, at *6 (S.D. Cal. Sept. 5, 2008) ("In my judgment, the commonality requirement is met here. The putative class claims stem from the same alleged conduct, *i.e.,* NCO allegedly calling consumers on their cellular telephones, or other wireless devices, without 'prior express consent,' using an 'automatic telephone dialing system' or an 'artificial or prerecorded voice.'").

### III.    Mr. Johnson is typical of the members of his proposed class.

#### A. Mr. Johnson has standing to pursue this matter on behalf of himself and the members of his proposed class.

Navient argues that "as indicated by the recent decision of the United States Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), [Mr. Johnson] has no standing to sue for himself or the purported class." Doc. 100 at 7. This is not true. As such, Navient's corollary argument that Mr. Johnson is not typical of the members of his proposed class because he "cannot establish standing," *id*. at 19, fails.

To start, in *Campbell-Ewald Co.* the Supreme Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case[.]" 136 S. Ct. at 672. It continued: "We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.*

Here, after Mr. Johnson filed his motion for class certification, Navient offered him $90,000. It did not, however, offer judgment against itself, *see* Doc. 100 at 12 ("Without making any admissions or waiving any defenses, NSI tendered a check to Johnson . . . in the amount of $90,000."), or injunctive relief that Mr. Johnson seeks. *See* Navient's June 13, 2016 letter to Mr.

Johnson's counsel, attached as Exhibit B. Mr. Johnson accepted neither Navient's individual offer, nor the money it tendered.

Considering this, Navient's interpretation of the Supreme Court's decision in *Campbell-Ewald Co.*—that it indicates Mr. Johnson "has no standing to sue for himself or the purported class," *id.* at 7—is without support. Simply, while explaining that an unaccepted offer does not moot a plaintiff's claim, the Supreme Court, in *Campbell-Ewald Co.*, refused to consider whether a defendant's "deposit[] [of] the full amount of the plaintiff's individual claim in an account payable to the plaintiff" would moot the plaintiff's claim. *Id.* Stated otherwise, the Supreme Court chose not to address the very principle for which Navient suggests its decision stands.

No matter, following the Supreme Court's decision in *Campbell-Ewald Co.*, the only circuit court of appeals to address whether "the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff," 136 S. Ct. at 672, explained it would not:

> Accordingly, when a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification.

> This conclusion is consistent not only with *Campbell–Ewald* but also with previous Supreme Court decisions noting a named plaintiff's "'personal stake' in obtaining class certification," *Geraghty,* 445 U.S. at 404, 100 S.Ct. 1202, recognizing "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires," *id.* at 399, 100 S.Ct. 1202, and disapproving of the "picking off" of named plaintiffs to deny a would-be class representative a fair opportunity to seek class relief, *see Roper,* 445 U.S. at 339, 100 S.Ct. 1166. As the Court said in *Roper,* 445 U.S. at 339, 100 S.Ct. 1166, "[r]equiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions." *But cf. Genesis Healthcare,* 133 S.Ct. at 1529–32 (applying these authorities narrowly in the FLSA collective action context).

Contrary to Allstate's argument, our conclusion is also consistent with the proposition that "a court may have 'discretion to halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents her from accepting total victory.'" *Diaz,* 732 F.3d at 955 (quoting *Genesis Healthcare,* 133 S.Ct. at 1536 (Kagan, J., dissenting)). A named plaintiff exhibits neither obstinacy nor madness by declining an offer of judgment on individual claims in order to pursue relief on behalf of members of a class.[1] As the Supreme Court has recognized, the class action device is often the only effective means of pursuing relief on behalf of injured persons. "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Roper,* 445 U.S. at 339, 100 S.Ct. 1166. A named plaintiff acts sensibly by pursuing all of the relief sought in the complaint, and "a judgment satisfying an individual claim does not give a [named] plaintiff ..., exercising her right to sue on behalf of other employees, 'all that [she] has ... requested in the complaint (*i.e.,* relief for the class).'" *Genesis Healthcare,* 133 S.Ct. at 1536 (Kagan, J., dissenting) (third and fourth alterations in original) (quoting *Roper,* 445 U.S. at 341, 100 S.Ct. 1166 (Rehnquist, J., concurring)).

*Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016).

Consequently, neither the Supreme Court's decision in *Campbell–Ewald Co.*, nor the only circuit court opinion on point, supports Navient's contention that Mr. Johnson lacks standing to pursue this matter on behalf of himself and the members of his proposed class. In fact, relevant case law suggests quite the opposite. *See, e.g., Fauley v. Royal Canin U.S.A., Inc.*, 143 F. Supp. 3d 763, 765 (N.D. Ill. 2016) ("At all events, no further briefing is necessary on whether the payment defendants propose, if effectuated, would obviate the need for class discovery. In this regard, I agree with the Ninth Circuit and the several district courts that have concluded that the

---

[1] Indeed, Mr. Johnson explained this reasonable position during his deposition. Doc. 75-6 at 11 (35:21-25, 36:1-6) (Q. "Aside from what you've already told me, what do you hope to accomplish in this case, if anything?" A. "Number one, is to stop this practice of harassing people on the phone. That's the number one. And I know that the only way that I'm probably going to be able to accomplish this is to cost this company a whole lot of money. They're just going to keep doing it as long as nobody is going to say anything. As long as nobody says anything or does anything, Navient Solutions will continue breaking the law.").

*Campbell–Ewald* Court's admonition that 'a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted,' *id*. means that it is inappropriate to enter judgment on a named plaintiff's individual claims, 'over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification.'") (collecting cases). Thus, Navient's argument that Mr. Johnson's "lack [] of standing to proceed . . . renders his claim atypical, Doc. 100 at 20-21, is baseless.[2]

### B. Mr. Johnson's expert's methodology associates Mr. Johnson with his cellular telephone number.

Navient argues that Mr. Johnson "fails to meet the requirements of typicality . . . [because] [b]ased on [Mr. Johnson's expert's methodology] . . . the Cell Number is associated with Bottoms,

---

[2]        Worth mentioning, Navient's *Campbell-Ewald Co.*-related argument assumes that Navient offered Mr. Johnson complete individual relief. It did not. First, Navient did not offer judgement against itself in this matter, nor has it asked this Court to enter judgment in its favor. Navient, therefore, could not have, by way of its offer, deprived Mr. Johnson of standing to pursue his claim. *See Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1168 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 2337 (2013) ("We hold the failure of Appellees to offer judgment prevented the mooting of Appellants' FDCPA claims."); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 766 (4th Cir. 2011) ("In sum, the failure of the Defendants to make their attempted offer for full relief in the form of an offer of judgment prevented the mooting of the Plaintiffs' FLSA claims."). Second, Navient did not offer injunctive relief that Mr. Johnson seeks. And because it did not offer to satisfy Mr. Johnson's prayer to enjoin Navient from continuing its violative behavior, or to have a class certified against it, Navient could not have mooted Mr. Johnson's claim by way of a tender of complete individual relief. *See Valencia v. Affiliated Grp., Inc.*, No. 07-61381- CIV-MARRA, 2008 WL 437289, at *2 (S.D. Fla. Sept. 24, 2008) (denying a defendant's motion to dismiss a plaintiff's claim as moot because the "[d]efendant did not offer to satisfy [the] [p]laintiff's demand for declaratory and injunctive relief"). Third, Mr. Johnson may well be entitled to more than $90,000 in statutory damages, as Navient's damage calculation does not separately account for damages associated with artificial or prerecorded voice calls. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015) ("In plain terms, the statute allows a person to recover '$500 in damages for each' 'violation of this subsection.' Section 227(b)(1) has no language limiting the recovery to $500 per 'call' or 'fax.'"). Here, Navient used an ATDS as well as a pre-recorded or artificial voice to place calls to Mr. Johnson's cellular telephone number. *See* Transcript of the deposition of Patricia Peterson, attached as Exhibit F at 134:5-15.

not Johnson, during the time period when calls were made." Doc. 100 at 21. Navient then states: "Thus, it is not at all clear that Johnson himself qualifies as a class member." *Id.*

But Navient's suggestion that the methodology it references does not identify Mr. Johnson as the individual associated with his cellular telephone number is mistaken. *See* Transcript of the deposition of Anya Verkhovskaya, attached as Exhibit C, at 34:14-20 (Q. "Did you apply that methodology to the telephone number at issue in this case?" A. "Yes." Q. "What was the result of that?" A. "The name and address." Q. "The name and address of who?" A. "Of Randy Johnson."); Declaration of Anya Verkhovskaya, attached as Exhibit D (detailing that the subject methodology returned Mr. Johnson as the individual associated with his cellular telephone number).

Nonetheless, even if the methodology to which Navient refers did not return Mr. Johnson as the individual associated with his cellular telephone number, it does not follow that Mr. Johnson is not a member of his proposed class.[3] Indeed, Mr. Johnson defines his proposed class as:

> Each person and entity throughout the United States (1) to whom Navient Solutions, Inc. placed one or more telephone calls (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) after the person or entity informed Navient that it was calling the wrong telephone number, (5) between May 4, 2011 and March 7, 2016.

Doc. 75 at 2.

Important, then, is that Navient's designated Rule 30(b)(6) witness conceded that Mr. Johnson falls within his proposed class definition. *See* Doc. 75-2 at 15 (171:14-19) (Q. You would

---

[3]    Navient's argument here is typical of a theme that runs through its response to Mr. Johnson's motion for class certification. Specifically, Navient conflates the ability to identify members of Mr. Johnson's proposed class by way of a single methodology—which, in the real world, will not operate in a vacuum, absent resort to any additional means—with the sufficiency of Mr. Johnson's proposed class definition. These concepts are not, however, one and the same. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015) (explaining that a district court should not deny class certification, where the class is properly defined, simply "because it may be challenging to identify particular class members"); *accord infra*, Section VI.B.

agree with me that Mr. Johnson received a call by an autodialer from NSI on his cell phone after a wrong number code was entered in the system for his cellular telephone number, right? A. Yes.).[4]

## IV.   Mr. Johnson will continue to adequately represent his proposed class.

### A.  That Mr. Johnson refused to accept Navient's individual offer because it did not provide any relief to the members of his proposed class does not make him an inadequate class representative.

Incredibly, Navient argues that because Mr. Johnson refused to accept its individual offer of $90,000 he "is not an adequate class representative." *Id*. at 21. That is, Navient contends that Mr. Johnson's decision to reject its individual offer of $90,000 because it did not provide any relief to the members of his proposed class means that he will not "fairly an adequately protect the interest of the class." *Id*. Navient's argument, on its face, is quite ironic, given that Mr. Johnson turned down what Navient characterizes as an individual monetary windfall for the very purpose of protecting the interests of the members of his proposed class.

Of course, had Mr. Johnson accepted Navient's offer, to the detriment of the members of his proposed class, Navient would argue that this case is over. Assuredly, by putting the interests of the members of his proposed class above his own financial interest, Mr. Johnson has demonstrated that he is a model class representative, not the other way around. And the Catch-22

---

[4]   Noteworthy, although Navient's expert states through the second of her two declarations that Mr. Johnson "is not a member of the class he proposes to represent," Doc. 100-4 at 2, she quickly backtracked from her statement during her deposition. *See* Transcript of the deposition of Margaret Daley, attached as Exhibit E, at 100:6-19 ("Q. . . . Do me a favor and take a look at the first heading that you or subheading that you include in this declaration. It says, Randy Johnson is not a member of the class he proposes to represent. Tell me why do you believe that Randy Johnson is not a member of the class he proposes to represent." A. "I think that's probably inelegant. What I'm really arguing here is that he's not an appropriate class representative of the class he proposes to represent for a number of reasons that are detailed."). Curiously, Navient's expert went on to testify that she was not offering an opinion as to whether Mr. Johnson is an adequate class representative. *See id*. at 104:1-4 (Q. "Are you offering a legal opinion under Federal Rule of Civil Procedure 23 that Mr. Johnson isn't an adequate class representative?" A. "No.").

that Navient attempts to place Mr. Johnson in—either accept its individual offer and subject himself to a mootness argument, or reject Navient's individual offer and be rendered an unacceptable class representative—can only be seen as an improper end-run around Rule 23. *See Mavris v. RSI Enterprises, Inc.*, 303 F.R.D. 561, 566 (D. Ariz. 2014) ("Picking off class representatives with paltry sums, thereby leaving other putative class members in the lurch, is an abuse of the Federal Rules that is designed to do nothing more than frustrate class actions.").

### B. A representative plaintiff need not be the party with the largest financial interest.

Navient states that "courts frequently measure adequacy by a proposed financial interest in a case," and that "courts recognize 'a requirement that lead plaintiff be the party with the largest financial interest[.]'" Doc. 100 at 21 (quoting *Leech v. Brooks Automation, Inc.*, No. CIV A 06-11068-RWZ, 2006 WL 3690736, at *1 (D. Mass. Dec. 13, 2006)). But while Navient implies, by its statement, that Mr. Johnson is not an adequate representative plaintiff in this matter unless he has "the largest financial interest" in it, Navient fails to inform this Court that the "largest financial interest" component to the court's discussion in *Leech* is applicable only in Private Securities Litigation Reform Act cases—of which this matter is not:

> The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires courts to appoint as lead plaintiff the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute further directs that courts "adopt a presumption" that the "most adequate plaintiff" is the plaintiff that: (aa) "filed the complaint;" (bb) has the "largest financial interest in the relief sought by the class;" and (cc) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I)(aa)-(cc).

*Id.* at *1.

Significantly, no similar "largest financial gain" language exists in the text of Rule 23 or relevant case law. Navient's adequacy-based argument, therefore, as it depends on the "requirement that a lead plaintiff be the party with the 'largest financial gain'," is meritless.

**V.    Questions of law and fact common to the members of Mr. Johnson's proposed class predominate over any questions affecting only individual class members.**

Navient wrongly conflates, in its response to Mr. Johnson's motion for class certification, its arguments regarding predominance and manageability as a sub-element of superiority. *See* Doc. 100 at 21-27. Mr. Johnson addresses Navient's combined argument—as improper as it is—in response to its suggestion that his proposed class is not manageable. *See infra*, Section VI.B.

**VI.   A class action is superior to other available means for the fair and efficient adjudication of this matter.**

   **A.   The overwhelming majority of the members of Mr. Johnson's proposed class are not entitled to recoveries under the TCPA large enough to incentivize them to litigate their claims individually.**

Navient contends that a class action is not the superior method to adjudicate this matter because the members of Mr. Johnson's proposed class have an adequate incentive to litigate their claims individually. *See* Doc. 100 at 25. In support of its position Navient states that "the Seventh Circuit has held that damages as low as $50,000 provide adequate incentive to litigate a claim individually." *Id.* (citing *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008)). Navient then notes that "if litigated, Johnson's potential recovery could be worth as much as $88,500 individually[,]" *id.* and "[i]t is possible that other supposed class members would have similar amounts to pursue." *Id.*

Built into Navient's argument is an assumption that the members of Mr. Johnson's proposed class are each entitled to damages in excess of $50,000. This is, however, not true. In fact, Navient's own expert confirms as much:

> . . . I examined the 518,841 sample records to identify how Mr. Johnson's 56 calls compared to other proposed class claimants. I observed that the average number of calls placed was 33.26118, and the median was 6. Of the sample phone numbers, 85% of the numbers had fewer calls placed to them than were placed to Mr. Johnson's number. It should be noted that these records reflect the number of calls placed, as opposed to the number of calls received and completed.

> The wide variations in the number of calls received by potential class claimants is noteworthy. Analysis of this "statistically sound sample" data shows that over 60% of the potential class claimants received 10 or fewer calls—17% received only one call. By contrast, while only 9% of the potential class claimants received more than 100 calls, individual class claimants can point to records showing they received many hundreds of calls.

Doc. 100-4 at 20, ¶¶ 52-53.

This means that given damages available to TCPA plaintiffs—$500 per violation—over 60% of the members of Mr. Johnson's proposed class would be entitled to recover $5,000 or less ("10 or fewer calls" multiplied by $500). The members of Mr. Johnson's proposed class who received the median number of calls, or 6, would be entitled to recover $3,000. Just 17% of the members of Mr. Johnson's proposed class would be entitled to $500. And only 9% of proposed class members would be entitled to damages that exceed $50,000.

Consequently, Navient's suggestion that class members each have an adequate incentive to litigate their claims individually is incorrect. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("Moreover, the relatively small potential recovery in individual actions ($500 in the absence of a finding of willfulness) and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution."); *St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) ("Because the statutory damages available to each individual class member are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the prosecution of separate actions."); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are

therefore unlikely to bring suit against Beachwood, which makes a class action the superior mechanism for adjudicating this dispute.").[5]

**B. Mr. Johnson's proposed class is manageable.**

Navient suggests that this Court should deny Mr. Johnson's motion for class certification because Mr. Johnson's class is not "manageable." Doc. 100 at 10, 24-27. In doing so, Navient makes only a passing reference to the Seventh Circuit's opinion in *Mullins*. This is significant given that the Seventh Circuit, in *Mullins,* made clear that while "[a] court must consider the 'likely difficulties in managing a class action,' . . . it must balance countervailing interests to decide whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." 795 F.3d at 658. Likewise, it noted that "[a]t bottom [a] district court [is] correct not to let a quest for perfect treatment of one issue become a reason to deny class certification and with it the hope of any effective relief at all." *Id.* at 662.

The Seventh Circuit then reiterated "the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Id.* at 663. In other words, because manageability concerns are simply part of a larger balancing test, they can be neither viewed in a vacuum absent the benefits associated with class treatment, nor as issues in and of themselves dispositive of a court's decision to certify a class. *See id.* at 664. As a result, "refusing to certify on manageability grounds alone should be the last resort." *Id.*

---

[5]     In any event, to the extent that any member of Mr. Johnson's proposed class believes he or she could receive a better recovery through individual litigation, class certification will not preclude him or her from doing so. Indeed, members of Mr. Johnson's proposed class will be given the opportunity to exclude themselves from this case, thus allowing them to pursue their claims individually. *See Harper v. Law Office of Harris and Zide LLP*, Case No. 15-cv-01114-HSG, 2016 WL 2344194, at *5 (N.D. Cal. May 4, 2016) ("Putative class members are protected because they have the right to opt out of the class settlement if they wish to pursue their own potentially larger claims.").

Not surprisingly, then, with reference to *Mullins* the court in *Johnson v. Yahoo!, Inc.* very recently stated: "[T]he Seventh Circuit made clear that, at [the class certification] stage of the litigation, a plaintiff need not prove there is a reliable and administratively feasible way to identify all who fall within the class definition." No. 14 CV 2028, 2016 WL 25711, at *2 (N.D. Ill. Jan. 4, 2016) (certifying TCPA class action). Navient's manageability-related argument, therefore, is flawed from the outset.

No matter, Navient's specific contention that "manageability cannot be achieved here due to the many individual issues of fact underlying the purported claims," Doc. 100 at 25, does not withstand scrutiny. In fact, a close review of the "individual issues of fact" that Navient references shows that none of them make Mr. Johnson's proposed class unmanageable.

### 1. That each member of Mr. Johnson's proposed class "must prove that the asserted TCPA claim is his [or hers]" does not make Mr. Johnson's proposed class unmanageable.

First, Navient finds "unmanageable" that "Johnson [and each member of his proposed class] must prove that the asserted TCPA claim is his [or hers.]. *Id.* at 9. Describing its concern in more detail, Navient states: "In order for Johnson to pursue his own individual claim, he would have to establish both: (1) that NSI called the Cell Number during the relevant time period; and (2) that he was the user of the Cell Number at that time (such that he received the calls). This, however, would require proof beyond the scope of the methodology, raising highly individualized issues." *Id.*

But Navient ignores that in response to Mr. Johnson's discovery requests, it stated that it made approximately 9,688,533 calls to 276,874 telephone numbers—each of which Navient's records indicate was assigned to a cellular telephone service—after a date on which Navient's system included a wrong number code for the telephone numbers. *See* Exhibit A. Accordingly,

there is no proof required to identify "that NSI called the Cell Number[s] during the relevant time period," as Navient has already made this determination.

Also pertinent, Navient overlooks that its expert conducted an analysis of a sample of these 276,874 telephone numbers, and found that the methodology Plaintiff's expert proposes to identify names and addresses associated with the telephone numbers resulted in names and addresses 99% of the time. *See* Exhibit E at 147:14-20. Correspondingly, and if extrapolated from her sample, Navient's expert's findings show that Mr. Johnson will be able to send direct mail notice to individuals associated with 99% of these telephone numbers, and ask them to identify whether they received wrong number calls from Navient during the relevant time period.[6]

Of note, the Seventh Circuit, in *Mullins*, referenced the propriety of individuals self-identifying as members of a class, by affidavit or otherwise. 795 F.3d at 672 ("If the class is ascertainable . . . courts should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits."). It then went on to state that "[a]s long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected." *Id*. at 671.

Such is the case here, as Navient possesses a variety of available means to verify the claim of any class member who identifies himself or herself as having received a wrong number call from Navient during the relevant time period. For example, Navient could compare the name of

---

[6]     This 99% rate of return makes resort to subpoenas to telephone service providers unnecessary, as Mr. Johnson's expert planned to use such a subpoena process only "to supplement the information obtained via the data processing [she] described[.]" Doc. 102-1 at 7, ¶ 16. In other words, because Plaintiff's expert's methodology returns—according to Navient's expert's sample—names and addresses for the telephone numbers at issue 99% of the time, it is unnecessary to subpoena "wireless carriers . . . to produce subscriber identifying information, such as name, address and other information, based upon the cellular telephone number for a particular subscriber." *Id*., ¶ 17.

any self-identifying class member with the name of the individual who Navient attempted to reach when placing calls to the telephone number associated with the self-identifying class member. If the names match, Navient's calls may have been directed to an intended recipient, who does not have a valid claim against it. In fact, Navient's expert conducted this very analysis, and was able to determine which of the names obtained by using Plaintiff's expert's methodology matched the names of the individuals that Navient intended to call. *See* Doc. 100-4; Exhibit E at 143:21-24; 144:1-4.

As well, Navient can verify any self-identifying class member's claim that he or she received a wrong number call from Navient during the relevant time period by reviewing recordings that Navient maintains of each conversation it has with an individual to whom it places a call. *See* Exhibit F at 175:4-14 (Q. "How long does Navient maintain recordings like the ones it produced in this case?" A. "At this time, we're maintaining everything indefinitely." Q. "Does NSI record every conversation between one of its agents and a person with whom it speaks?" A. "Yes." Q. "For how long has it done this?" A. "As long as—I don't know the start date but a long time.").[7]

Navient's manageability-related concern stemming from its statement that "[i]n order for Johnson to pursue his own individual claim, he would have to establish both: (1) that NSI called the Cell Number during the relevant time period; and (2) that he was the user of the Cell Number at that time (such that he received the calls)," Doc. 100 at 9, is therefore unsupported.[8] In short,

---

[7]    Noteworthy, the recordings that Navient maintains of conversations it had with Mr. Johnson very clearly reflect that Mr. Johnson repeatedly informed Navient that he was not the intended recipient of its calls, and that he would like Navient to stop placing calls to his cellular telephone number. *See* Doc. 75 at 4-6.

[8]    Moreover, every class action involves the need to identify class members who fit the criteria enumerated in a class definition. While those determinations are necessarily unique to each

the individualized issues that Navient connects with its concern are not only manageable, but have actually been managed in connection with a sample of the telephone numbers at issue, which Navient's expert characterizes as "probative to the validity of plaintiff's methodology." Doc. 100-4 at 25, n.40; Exhibit E at 137:17-18.

**2. That Navient believes Mr. Johnson's proposed expert's methodology does not "distinguish between subscribers and users of cellular telephone numbers" does not make Mr. Johnson's proposed class unmanageable.**

Second, Navient finds "unmanageable" that "[Mr. Johnson's expert's] methodology would return results based on ownership, not use[.]" Doc. 100 at 9. In other words, Navient contends that because the process that Mr. Johnson's expert proposes to associate names and addresses with the 276,877 wrong numbers at issue would not, absent resort to additional means, distinguish between subscribers and users of cellular telephone numbers, Mr. Johnson's proposed class is not manageable.

Navient's concern is, however, an issue that can also be resolved by resort to self-identification. *Accord Mullins*, 795 F.3d at 669 (stating that a court can "rely on self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members"). Simply, a member of Mr. Johnson's proposed class who receives notice of this matter can easily state whether he or she actually received a wrong number call from Navient. *See, e.g.*, *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000) (noting that disputes about whether an individual is a member of the class "can be remedied through proper drafting of the claim form."); *Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2008 WL 5479111, at *6 (S.D. Fla.

---

class member (*e.g.*, whether the class member is a woman in a gender discrimination case, or whether the class member purchased a particular product in a products liability case) the need for such determinations does not defeat class certification. If it did, there could be no class actions.

Dec. 11, 2008) (explaining that "proper drafting of the claim form may help exclude non-[class members]").

> **3.** **Navient's hypothetical concern that "every record marked as a wrong number in NSI's system is not, in fact, a wrong number" does not make Mr. Johnson's proposed class unmanageable.**

Third, Navient finds "unmanageable" that "every record marked as a wrong number in NSI's system is not, in fact, a wrong number." Doc. 100-4 at 9. Quite significant, however, Navient is unaware of any specific instance in which a wrong number designation does not actually reflect a wrong number. *See* Exhibit E at 40:1-4 (Q. "Are you aware of a specific instance in which an agent intentionally—in which an agent selected the WN code by mistake?" A. "No."); 40:5-12 (Q. "In the next paragraph, Paragraph B reads, the agent intentionally selects the WN code as a way of removing the number from the automatically dialed system so that it may be manually dialed instead. Are you aware of a specific instance in which this happened?" A. "No."); 41:5-8 ("Are you aware of a specific instance in which a debtor lied about the number being wrong in order to avoid legitimate debt collection calls?" A. "No.");[9] 94:6-10 (Q. "Are you aware of a specific instance in which an agent selected an WN code when failing to connect with the borrower when another code such as TP may have been more accurate?" A. "No."); 95:2-8 (Q. "Are you aware of

---

[9] As an aside, even if Navient was aware of a specific instance in which an individual lied about his or her number being a wrong number, Navient's expert acknowledged that a person making such a lie would do so to "stop getting calls." Exhibit E at 41:9-14 (Q. "Why would a debtor lie about the number being wrong in order to avoid legitimate debt collection calls?" A. "It's speculation, but I would presume common sense would tell you so they would stop getting calls."); 126:12-15 (Q. "Why would somebody lie and say it's a wrong number?" A. "To have the debt collector stop calling them."). Thus, Navient would have no more consent to call a person who lied about a wrong number than a person to whom Navient mistakenly directed a call. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014) ("We therefore conclude that Betancourt and Osorio, in the absence of any contractual restriction to the contrary, were free to orally revoke any consent previously given to State Farm to call No. 8626 in connection with Betancourt's credit-card debt.").

a specific instance in which an agent selected a WN code when it does not apply?" A. "No." Q. "Did you perform any analysis to determine that?" A. "No.").

And since Navient's unattributed concern is without any evidentiary support, it warrants little consideration. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07 C 5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (a defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals" included in a list of potential class members may not actually be part of the proposed class).

In any event, Navient's concern regarding "WN" codes found in its own system is belied by the fact that its own expert took care to outline a detailed process by which Navient is able to "evaluate the extent to which correct borrower contact information has been inaccurately labeled 'WN.'" *See* Declaration of Margaret Daley, relevant excerpts of which are attached as Exhibit G, at 15-16; Exhibit E at 99:16-22 (Q. "Okay. So if we look at the paragraph just below Subsection iii, you reference there are a variety of data analyses that could be conducted to identify and evaluate the inaccuracy and reliability. Is that sort of a check list of what you would do?" A. "These are some things that you could do."). So even if Navient's concern was more than a hypothetical, it is, by its expert's acknowledgement, manageable.

### 4. Navient's concern that "the group would be both over- and under-inclusive" does not make Mr. Johnson's proposed class unmanageable.

Fourth, Navient finds "unmanageable" that "the group would be both over- and under-inclusive." Doc. 100 at 10. Mr. Johnson takes this to mean that Navient believes the individuals that Plaintiff's expert's methodology associates with the 276,874 telephone numbers at issue will be both over inclusive and under inclusive, and not that Mr. Johnson's proposed class definition is itself over or under inclusive. Neither of these possibilities, however, makes Mr. Johnson's proposed class unmanageable.

To begin, Navient's concern that "the group will be . . . under inclusive" is a non-issue given that it ignores the availability of notice to class members by means other than direct mail. Indeed, the Seventh Circuit, in *Mullins*, stated as much:

> For Rule 23(b)(3) classes, Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The rule does not insist on actual notice to all class members in all cases. It recognizes it might be *impossible* to identify some class members for purposes of actual notice. See Shaw, 124 Yale L.J. at 2367–69. While actual individual notice may be the ideal, due process does not always require it. See *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 786 (7th Cir.2004) (rejecting requirement of individual notice); *Juris v. Inamed Corp.,* 685 F.3d 1294, 1321 (11th Cir.2012) (noting that "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice" and collecting cases); accord, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
>
> When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. See, e.g., *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174–75, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). When that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process. See *Hughes v. Kore of Indiana Enterprise, Inc.,* 731 F.3d 672, 676–77 (7th Cir.2013). As long as the alternative means satisfy the standard of Rule 23(b)(3), there is no due process violation. See, e.g., *Lilly v. Jamba Juice Co.,* No. 13–cv–02998–JST, 2014 WL 4652283, at *5 (N.D.Cal. Sept. 18, 2014) (rejecting notice argument for same reason); *Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 418 (N.D.Ill.2012) (same). Due process simply does not require the ability to identify all members of the class at the certification stage.

795 F.3d at 665.

Accordingly, Navient's concern that "the group will be . . . under-inclusive" is resolved by alternative means of notice, "such as notice through third parties, paid advertising, and/or posting in places frequented by class members," *id.*, all which Mr. Johnson is willing to do here.

As for Navient's concern that "the group will be . . . over-inclusive," "[t]he possibility that some putative class members might ultimately be found to be outside the class does not preclude

class certification." *Balbarin v. North Star*, No. 10 C 1846, 2011 WL 211013, at *1 (N.D. Ill. Jan. 21, 2011); *accord Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) ("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.").

      And not to be forgotten, the Seventh Circuit, in *Mullins*, devoted a very significant portion of its opinion to addressing, and rejecting, arguments nearly indistinguishable from the over-inclusive argument that Navient presents here. 795 F.3d at 666-69.

**VII.   Mr. Johnson's class is ascertainable.**

      Through its response to Mr. Johnson's motion for class certification, Navient concedes that Mr. Johnson's class is ascertainable:

> Finally, the Court should not entertain any contention from Johnson on Reply that NSI is arguing a lack of ascertainability here, in contradiction of the Seventh Circuit's decision in *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015), *cert denied*, 136 S. Ct. 1161 (2016)." Doc. 100 at 10. NSI understands that the methodology would result in compilation of a group of persons; in other words, that group would be ascertained.

Doc. 100 at 8.

      This is, of course, not surprising, given that Mr. Johnson's class is defined precisely, by objective criteria, and not in terms of success on the merits:

> To show that a class is ascertainable, a plaintiff must offer a definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Id.* at 659–60. In *Mullins*, the Seventh Circuit made clear that, at this stage of the litigation, a plaintiff need not prove there is a reliable and administratively feasible way to identify all who fall within the class definition. *Id.* at 657–58.

*Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at *4 (S.D. Ill. June 21, 2016) (certifying TCPA class action).

Date: July 22, 2016                    Respectfully Submitted,

                                       */s/ Aaron D. Radbil*
                                       Aaron D. Radbil
                                       Greenwald Davidson Radbil PLLC
                                       106 East Sixth Street, Suite 913
                                       Austin, Texas 78701
                                       Phone: (512) 322-3912
                                       Fax: (561) 961-5684
                                       aradbil@gdrlawfirm.com

                                       Michael L. Greenwald
                                       Jesse S. Johnson (*pro hac vice*)
                                       Greenwald Davidson Radbil PLLC
                                       5550 Glades Road, Suite 500
                                       Boca Raton, Florida 33431
                                       Tel: (561) 826-5477
                                       Fax: (561) 961-5684
                                       mgreenwald@gdrlawfirm.com
                                       jjohnson@gdrlawfirm.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed on July 22, 2016, via the Court

Clerk's CM/ECF system, which will provide notice to all counsel of record.

                                       /s/ Aaron D. Radbil
                                       Aaron D. Radbil

21