**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

Randy Johnson, on behalf of himself and
others similarly situated,

        Plaintiff,

v.                                                                    Case No. 1:15-cv-0716 LJM-MJD

Navient Solutions, Inc., f/k/a Sallie Mae, Inc.,

        Defendant.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION TO
PRELIMINARILY APPROVE THE PARTIES' CLASS ACTION SETTLEMENT**

## Table of Contents

Introduction ................................................................................................................... 1

Summary of the Settlement ............................................................................................ 2

   I.   This Court should preliminarily approve the settlement ........................................ 4

     A.   Consideration of various risks and costs that accompany continued litigation, against the backdrop of the significant value of the settlement, weighs in favor of preliminary approval. .................................................................................................................... 5

     B.   That this matter is complex, and would not likely have concluded for years, weighs in favor of preliminary approval. ............................................................................... 11

     C.   That class counsel strongly believe the settlement is fair, reasonable, and adequate, weighs in favor of preliminary approval. ............................................................... 12

     D.   The advanced stage of the proceedings at which the parties reached an agreement to resolve this matter weighs in favor of preliminary approval. ................................. 13

   II.   The settlement class satisfies Rule 23 ................................................................. 14

   III.   The notice plan satisfies the requirements of Rule 23 and due process ............................ 15

Conclusion ................................................................................................................... 17

# Table of Authorities

## Cases

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
 616 F.2d 305 (7th Cir. 1980)……………………..……………………………4, 13

*Bennett v. Behring Corp.*,
 96 F.R.D. 343 (S.D. Fla. 1982)…………………...……………………………11

*Birchmeier v. Caribbean Cruise Line Inc.*,
 No. 1:12-cv-04069, Doc. 513 (N.D. Ill. Oct. 26, 2016)…………………………9

*Campbell-Ewald Co. v. Gomez*,
 136 S. Ct. 663 (2016)………………………………………………………………6

*Connor v. JPMorgan Chase Bank*,
 No. 10 CV 1284 DMS BGS (S.D. Cal.)………………...……………………………9

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)……………………………………………………..13

*Donovan v. Estate of Fitzsimmons*,
 778 F.2d 298 (7th Cir. 1985)……………………...…………………………………..5

*Duke v. Bank of Am., N.A.*,
 No. 5:12-cv-04009-EJD (N.D. Cal.)…………….……………………………………9

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)……………………………………………...……………………15

*Ewing v. SQM US, Inc.*,
 No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494 (S.D. Cal. Sept. 29, 2016)…..………..7

*Gehrich v. Chase Bank USA, N.A.*,
 316 F.R.D. 215 (N.D. Ill. 2016)……………………...………………………………9

*Grady v. de Ville Motor Hotel, Inc.*,
 415 F.2d 449 (10th Cir. 1969)……………………...…………………………………10

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)……………………….…………………………………10

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010)……………………….……………………………4, 15

*In re Capital One Tel. Consumer Prot. Act Litig.*,
　　80 F. Supp. 3d 781 (N.D. Ill. 2015)……………………..………………………………..11

*In re Capital One Tel. Consumer Prot. Act Litig.*,
　　No. 12-cv-10064, MDL No. 2416 (N.D. Ill.)………………………………………………9

*In re Domestic Air Transp. Antitrust Litig.*,
　　148 F.R.D. 297 (N.D. Ga. 1993)………………………..…………………………………10

*Isby v. Bayh*,
　　75 F.3d 1191 (7th Cir. 1996)…………………………………...….…………5, 10, 12

*Johnson v. Brennan*,
　　No. 10–cv–4712–CM, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)……………………13

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
　　No. 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007)……………..………………5

*Malta v. Fed. Home Loan Mortg. Corp.*,
　　No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)………….……………………9

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*,
　　834 F.2d 677 (7th Cir. 1987)………………………….…………………………………..13

*Oppenlander v. Standard Oil Co. (Indiana)*,
　　64 F.R.D. 597 (D. Colo. 1974)…………………………………………………………….11

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
　　311 F.R.D. 688 (S.D. Fla. 2015)…………………………..……………………………….9

*Picchi v. World Fin. Network Bank*,
　　No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.)…………………………………9

*Prater v. Medicredit, Inc.*,
　　No. 14-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015)………………………………9

*Romero v. Dep't Stores Nat'l Bank*,
　　No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016)………………..7

*Schulte v. Fifth Third Bank*,
　　805 F. Supp. 2d 560 (N.D. Ill. 2011)………………………….…………………………..12

*Shepherd's Mktg., Inc. v. Ministers Life*,
　　No. 90-1328, 1992 WL 78776 (C.D. Ill. Mar. 3, 1992)……………………………………6

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
   279 F.R.D. 442 (N.D. Ohio 2012)……………………….……………………………10

*Smith v. Aitima Med. Equip., Inc.*,
   No. EDCV1600339ABDTBX, 2016 WL 4618780 (C.D. Cal. July 29, 2016)……………7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)……………………………………………………………………..7

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*,
   No. 12-174, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013)…………….…………………9

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006)……………………..…………………………………….5

*Vought v. Bank of Am., N.A.*,
   901 F. Supp. 2d 1071 (C.D. Ill. 2012)……………………………………………………12

*Wilkins v. HSBC Bank Nev., N.A.*,
   No. 14-cv-190 (N.D. Ill.)………………………………………………………………..9

**Regulations**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   30 F.C.C.R. 7961, 30 FCC Rcd. 7961……………………….…………………………..8

**Rules**

Fed. R. Civ. P. 23(c)(2)(B)………………………………………………………………15, 16

Fed. R. Civ. P. 23(e)(1)………………………………….………………………………15

**Secondary Materials**

2 McLaughlin on Class Actions (8th ed. 2011)………………………..…………………………13

4 Newberg on Class Actions (4th ed. 2010)………………………………………………10, 15

7B Charles Alan Wright, Arthur W. Miller & Mary Kay Kane, Fed. Prac. & Proc. (3d ed. 2010)..15

## Introduction

Randy Johnson, together with Shelly Toure and Tony Heard[1] (collectively, "Plaintiffs"), allege, on behalf of themselves and a class of similarly situated individuals, that Navient Solutions, Inc. ("Defendant") violated the Telephone Consumer Protection Act ("TCPA") by using an automatic telephone dialing system ("ATDS") to place calls to cellular telephone numbers that Defendant previously designated as wrong numbers.

Defendant denies Plaintiffs' material allegations, vigorously disputes that it violated the TCPA when contacting Plaintiffs and the class members, contends that Plaintiffs' and the class members' claims are not amenable to class certification, and denies that Plaintiffs and the class members are entitled to damages.

Nonetheless, after nearly twenty months of hard-fought litigation, and following three separate mediations, the parties agreed to resolve this matter for an all-cash settlement fund totaling $17.5 million. From the settlement fund, class members who submit a qualified claim will receive a *pro rata* distribution, and no amount of the settlement fund will revert to Defendant.

In line with the parties' agreement, Plaintiffs respectfully request that this Court: (1) preliminarily certify the settlement class, (2) conditionally approve the settlement as fair, adequate,

---

[1]      On August 23, 2016, Ms. Toure and Mr. Heard filed a class action complaint against Defendant in the Northern District of Illinois, styled *Toure and Heard v. Navient Solutions, Inc.*, Case No. 1:16-cv-08279 (N.D. Ill.) ("*Toure*"). The claims that Ms. Toure and Mr. Heard assert are identical to those that Mr. Johnson asserts here. The only material difference between the two matters is that the proposed class period in *Toure* picks up on the day after the certified class period here ends. That is, the certified class period here is from May 4, 2011 through March 7, 2016, *see* Doc. 122 at 1, whereas the proposed class period in *Toure* begins on March 8, 2016. Of note, upon reaching an agreement in principle to settle this matter the parties filed, in the Northern District of Illinois, a joint motion to transfer *Toure* to this Court. The Northern District of Illinois denied the motion, without prejudice, with an instruction to refile it upon the execution of the parties' class action settlement agreement. As such, the parties will file a renewed motion in short order to transfer *Toure* to this Court. Also worth mentioning, Ms. Toure and Mr. Heard are signatories to the parties' class action settlement agreement here.

reasonable, and within the reasonable range of possible final approval, (3) confirm Mr. Johnson's appointment as a class representative, and appoint Ms. Toure and Mr. Heard as class representatives, (4) confirm Plaintiffs' counsel's appointment as class counsel, (5) approve the proposed notice program as the best practicable under the circumstances that satisfies due process and Rule 23, (6) set a date for a final approval hearing, and (7) set deadlines for class members to submit claims for compensation, and to object to or exclude themselves from the settlement.

### Summary of the Settlement

Defendant agrees to create a non-reversionary cash settlement fund of $17.5 million, *see* settlement agreement, Section III.F., attached to the declaration of Aaron D. Radbil as Exhibit 1, to compensate an estimated 350,000 members, *id.*, II.28., of the following class:

> Each person and entity throughout the United States (1) to whom Navient Solutions, Inc. placed one or more telephone calls (2) directed to a telephone number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) after Navient Solutions, Inc. designated the telephone number to which it placed the call(s) as a wrong number, (5) between May 4, 2011 and the date of preliminary approval.

*Id*.

To obtain compensation from the settlement fund, class members will need to submit a claim to the settlement administrator[2] via a designated settlement website, by telephone, or by mail. *Id.* at III.E.[3] Class members who submit a timely claim will be entitled to a *pro rata* share of the settlement fund, less the costs of notice and claims administration, attorneys' fees, costs, and

---

[2]     The parties conducted a competitive bidding process and are close to agreeing on a settlement administrator to recommend. The parties will submit a supplemental filing identifying the administrator and providing an overview of the notice program. *Id.* at II.26.

[3]     A more detailed summary of the proposed notice plan will be provided via a supplemental declaration from the class administrator.

expenses that this Court may approve, and incentive awards to Plaintiffs that this Court may approve. *Id.* at III.F.1.[4]

Class members who do not opt out of the settlement will provide a release of claims tailored to the practices that gave rise to this matter. In particular, class members will release their claims "(a) that arise out of or are related in any way to the use by Defendant of an 'automatic telephone dialing system' or an 'artificial or prerecorded voice' to make 'calls' to a cellular telephone (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, <u>et seq.</u>, relevant regulatory or administrative promulgations and case law and including any text messages sent to Settlement Class Members) in connection with efforts to contact or attempt to contact Settlement Class Members, including, but not limited to, claims under or for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, <u>et seq.</u>, and any other statutory or common law claim arising from the use of automatic telephone dialing systems or an artificial or prerecorded voice, including any claim under or for violation of federal or state unfair and deceptive practices statutes, violations of any federal or state debt collection practices acts (including but not limited to, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 <u>et seq.</u>), invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppel; or (b) that arise out of or relate in any way to the administration of the settlement." *Id.* at II.21.

---

[4]     Prior to the final fairness hearing in this matter, Plaintiffs will ask this Court for incentive awards not to exceed a combined total of $35,000, and class counsel will ask this Court for an award of attorneys' fees not to exceed one-third of the settlement fund, and reimbursement of litigation costs and expenses not to exceed $55,000.

**Argument**

**I.    This Court should preliminarily approve the settlement.**

Rule 23(e) "requires court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). The Seventh Circuit correspondingly explained:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. Manual for Complex Litigation s 1.46, at 53-55 (West 1977). If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The preliminary fairness determination, therefore, requires only that a district court evaluate whether the settlement was negotiated at arm's-length, and whether it is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* Manual for Complex Litigation, § 21.632 (4th ed. 2004); *accord In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 350 ("By giving preliminary approval to the [p]roposed [s]ettlement [a]greement . . . [t]he Court merely finds that the proposed settlement is within the range of possible approval."). A full evaluation of the fairness of a settlement is reserved for the final fairness hearing.

But "[a]lthough [the fairness] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007), *adhered to on reconsideration*, No. 05 C 5944, 2008 WL 687287 (N.D. Ill. Mar. 12, 2008). "In order to evaluate the fairness of a settlement, a district court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties,[5] the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotation omitted). "Consistent with this approach, [courts] do not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (internal quotation omitted).

### A. Consideration of various risks and costs that accompany continued litigation, against the backdrop of the significant value of the settlement, weighs in favor of preliminary approval.

#### 1. Many risks and costs accompany continued litigation.

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks and costs accompany continued litigation.

---

[5]     Because notice to class members has not been disseminated, this factor is inapplicable at this stage of the proceedings.

First, pending before this Court at the time the parties notified it of the settlement were cross-motions for summary judgment. And through related briefing, Defendant outlined several noteworthy arguments in support of its request for judgment.

For example, Defendant argued that Plaintiffs' TCPA claims fail because the Federal Communications Commission ("FCC") recently clarified that agents of the federal government are not liable for violations of the TCPA stemming from autodialed calls placed on its behalf. *See* Doc. 142 at 24-30. That is, Defendant suggested that, because it made the subject calls on behalf of the federal government, and because Defendant is an agent of the federal government, it is immune from liability resulting from the calls at issue. And despite that Defendant's argument rests on the veracity of its self-characterization as an agent of the federal government, the issue underlying Defendant's characterization is one likely reserved for trial, as agency is generally an issue of fact. *See Shepherd's Mktg., Inc. v. Ministers Life*, No. 90-1328, 1992 WL 78776, at *2 (C.D. Ill. Mar. 3, 1992). Given, therefore, the inherent risk associated with all jury trials, Plaintiffs could not discount Defendant's merit-based argument.

As well, Defendant argued that its offer of judgment to Mr. Johnson mooted his case, and that this Court should consequently dismiss Mr. Johnson's action for lack of subject matter jurisdiction. *See generally* Doc. 138. Specifically, Defendant suggested that because it tendered to Mr. Johnson a check for "the full value of his claims," it provided him "with more than he could hope to recover in this litigation on an individual basis," and Plaintiff's case was accordingly moot. *See id.* at 4-5.

Defendant based its argument on a dissenting opinion in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016):

> Thus, in the well-reasoned dissent, Chief Justice Roberts, joined by Justice Scalia and Justice Alito, specifically stated that there is "an easy answer" to the question

of whether a defendant who made an offer of full and complete relief is willing and able to pay: have the defendant actually pay the money. *Id*. at 680. The Justices noted: "The majority does not say that payment of complete relief leads to the same result. For aught that appears, the majority's analysis may have come out differently if Campbell had deposited the offered funds with the District Court." *Id.* at 683; *see also id.* at 684 (Alito, J. dissenting) ("[A] defendant might deposit the money with the district court (or another trusted intermediary) on the condition that the money be released to the plaintiff when the court dismisses the case as moot."). In fact, as Justice Alito stated: "I am heartened that the Court appears to endorse the proposition that a plaintiff's claim is moot once he has 'received full redress' from the defendant for the injuries he has asserted." *Id.* at 685 (Alito, J., dissenting) (emphasis in original).

Doc. 138 at 5-6.

Considering that the makeup of the Supreme Court could soon turn Justice Roberts' dissent in *Campbell-Ewald Co.* into a majority position, Plaintiffs were unable to ignore Defendant's subject matter jurisdiction-based argument.

Moreover, Defendant suggested that Mr. Johnson failed to establish Article III standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). *See* Doc. 142 at 21-24. In support of its position, Defendant cited three decisions from district courts outside the Seventh Circuit: *Ewing v. SQM US, Inc.*, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494 (S.D. Cal. Sept. 29, 2016); *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099, at *1 (S.D. Cal. Aug. 5, 2016); and *Smith v. Aitima Med. Equip., Inc.*, No. EDCV1600339ABDTBX, 2016 WL 4618780, at *1 (C.D. Cal. July 29, 2016). Doc. 142 at 22. And although this Court previously rejected Defendant's argument, *see* Doc. 43 at 1, it is, as evidenced by the decisions Defendant cited, one that has at least a small minority following. As such, and since no circuit court of appeals has addressed Defendant's standing-based contention in the context of the TCPA, Plaintiffs could not disregard Defendant's argument.

Second, in addition to Defendant's summary judgment arguments, *see generally* Docs. 138, 142, Defendant repeatedly stated it would move to decertify the class. *See, e.g.*, Doc. 126 at 6

("Furthermore, at the appropriate time, NSI will move to decertify the class because it is confident that class action treatment of the asserted claims will prove to be inappropriate."). And it did not do so without support. In fact, on top of its voluminous briefing associated with class certification, *see* Docs. 100-106; 109, and its lengthy petition for permission to appeal this Court's order certifying the class, *see* Doc. 130, Defendant not only referenced its position regarding de-certification through its response to Plaintiff's motion for summary judgment, *see* Doc. 141 at 15-17, but also attached hundreds of pages of exhibits and declarations to buttress it. *See* 141-1–142-13. Worth mentioning, Defendant's argument regarding de-certification rests heavily on its critique of Plaintiff's expert's testimony, which this Court did not consider in reaching its decision to certify the class. *See* Doc. 122 at 4 n.1 ("Navient has moved to Strike the testimony of Anya Verkhovskaya. Dkt. No. 109. The Motion is DENIED without prejudice because it was unnecessary to rely upon her testimony to certify the proposed class."). With this in mind, Plaintiffs could not turn a blind eye to Defendant's certification-based contention.

Third, Defendant argued that, even if Plaintiffs did obtain a judgment against it, the related potential statutory damage award would violate Defendant's due process rights, and the aggregate damage award to the class would be unconstitutional. *See* Doc. 142 at 34-36. This, viewed against the changing legal landscape in which this matter was litigated, *see, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, *pet. for rev. pending*, *ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.), is something Plaintiffs could not ignore. Simply, even if Plaintiffs successfully jumped over every merit-based, subject matter jurisdiction-based, and standing-based hurdle in their way, they could not be certain of the damage award ultimately available to the class.

## 2.   The value of the settlement is quite significant.

Notwithstanding the various risks and costs that accompany continued litigation, the value of the settlement compares very favorably, on a per-class member basis (approximately $50.00 per class member, calculated by dividing the $17.5 million settlement fund by the approximately 350,000 class members), to similar TCPA class action settlements that courts have recently approved. *See, e.g.*, *Birchmeier v. Caribbean Cruise Line Inc.*, No. 1:12-cv-04069, Doc. 513 (N.D. Ill. Oct. 26, 2016) (fund of $56-$76 million for approximately 1 million class members); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227 (N.D. Ill. 2016) (just over $1.00 per-class member); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) (under $3.00 per-class member); *Prater v. Medicredit, Inc.*, No. 14-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) (just under $10 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) (under $4.00 per class member); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009-EJD (N.D. Cal.) (just over $4.00 per class member); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 DMS BGS (S.D. Cal.) (under $5.00 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) (under $5.00 per class member); *In re Capital One Tel. Consumer Prot. Act Litig.*, No. 12-cv-10064, MDL No. 2416 (N.D. Ill.) (under $5.00 per class member).

Furthermore, the settlement provides class members with substantial monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining

that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that, since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). This means that the settlement will provide class members real monetary relief they otherwise would likely never have pursued on their own.[6]

### 3.   Balancing risks and costs that accompany continued litigation with the significant value of the settlement supports preliminary approval.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Newberg on Class Actions § 11:50 (4th ed. 2010); *accord Isby*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation."). This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

---

[6]   Class counsel estimates, based on their experience with TCPA class action settlements and associated claims rates, that class members who submit a qualified claim here will receive somewhere between $200 and $550.

Here, consideration of various risks and costs that accompany continued litigation, *see supra*, Argument, Section I.A.1, against the backdrop of the significant value of the settlement, *see id*, Section I.A.2, weighs in favor of preliminary approval. *Accord In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ("[A] settlement is a compromise, and courts need not—and indeed should not—reject a settlement solely because it does not provide a complete victory to plaintiffs.") (internal quotation omitted), *appeal dismissed* (May 5, 2015), *appeal dismissed* (June 8, 2015), *appeal dismissed* (June 26, 2015); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'").

## B. That this matter is complex, and would not likely have concluded for years, weighs in favor of preliminary approval.

This matter involved a variety of complex legal questions, most of which were difficult, and several of which were novel. From the outset, the merit-based, subject matter jurisdiction-based, and standing-based arguments that Defendant raised, *see supra*, Argument, Section I.A.1, involved difficult and unsettled legal questions, which are at the forefront of class action, constitutional, and consumer protection law.

As well, it is highly unlikely that this matter would have concluded, absent settlement, in the near future. Indeed, Defendant not only suggested, but demonstrated, that it intended to fight both liability and damage-related issues through summary judgment, trial, and appellate proceedings. *See, e.g.*, *supra*, Argument, Section I.A.1.

In addition, the costs and expenses associated with continued litigation would have been high. *Accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant.").

Thus, the complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case by continued litigation, weigh in favor of preliminary approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

**C.  That class counsel strongly believe the settlement is fair, reasonable, and adequate, weighs in favor of preliminary approval.**

Courts are "entitled to rely heavily on the opinion of competent counsel." *See Isby*, 75 F.3d at 1200 (internal quotation omitted). Here, class counsel—whose qualifications include substantial experience with TCPA class actions, *see* Ex. A, ¶¶ 8-30—believe the settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Class counsel additionally believe that the benefits of the settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*, ¶ 37.

Of note, class counsel's opinion here is particularly meaningful given the lengthy procedural history underlying this matter, *see id.*, ¶¶ 38-54, and that there was no collusion in the negotiation process. *Accord Isby*, 75 F.3d at 1200 ("Further, there is no indication that the Proposed

12

Settlement Agreement is the victim of collusion."). This is evidenced, if by nothing more, than the simple fact that the parties mediated this case three times—once before Magistrate Judge Dinsmore, and twice before the Hon. William Cahill (Ret.) of JAMS, *see id.*, ¶¶ 35-36—before reaching an agreement to resolve it. *See* 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] . . . helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10–cv–4712–CM, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive.").

### D. The advanced stage of the proceedings at which the parties reached an agreement to resolve this matter weighs in favor of preliminary approval.

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. For instance, "[t]he danger of a premature, even a collusive, settlement is increased when . . . the status of the action as a class action is not determined until a settlement has been negotiated, with all the momentum that a settlement agreement generates[.]" *Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*, 834 F.2d 677, 680 (7th Cir. 1987).

Here, the parties did not reach an agreement to resolve this matter until after the district court certified the class, and after the Seventh Circuit denied Defendant's petition for interlocutory review under Federal Rule of Civil Procedure 23(f). *Compare* Doc. 122 (order certifying the class), *with* Doc. 151 (notice of class action settlement). Moreover, before the parties agreed to resolve this case, they conducted a very significant amount of discovery, including depositions, and Defendant's production of over 20,000 pages of documents. *See* Ex. A, ¶ 41. As well, for much of

this case the parties provided a monthly report to Judge Dinsmore, and participated in a monthly telephone conference with Judge Dinsmore, regarding the status of discovery. *See id.*, ¶ 42.

## II.     The settlement class satisfies Rule 23.

This Court previously certified the following class: "Each person and entity throughout the United States (1) to whom Navient Solutions, Inc. placed one or more telephone calls (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) after the person or entity informed Navient that it was calling the wrong telephone number, (5) between May 4, 2011 and March 7, 2016." Doc. 122 at 1. Thereafter, the Seventh Circuit denied Defendant's petition for permission to appeal this Court's order certifying the class. Doc. 130.

The parties' proposed settlement class definition differs slightly from the certified class. In particular, the parties agreed to revise the language of subsection (4) of the class definition to better identify the class members at issue. Thus, the full settlement class definition reads: Each person and entity throughout the United States (1) to whom Navient Solutions, Inc. placed one or more telephone calls (2) directed to a telephone number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) after Navient Solutions, Inc. designated the telephone number to which it placed the call(s) as a wrong number, (5) between May 4, 2011 and the date of preliminary approval.

The parties' slight alteration to the certified class does not affect this Court's Rule 23 analysis. *See generally id.* But it does serve to better identify the members of the settlement class and make the proposed notice plan, *see infra,* Argument, Section III, more precise. As such, the parties request that this Court certify, for settlement purposes, their proposed settlement class.

14

**III.    The notice plan satisfies the requirements of Rule 23 and due process.**

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

"The notice need not be unduly specific. The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprize interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re AT & T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. at 352 (quoting Newberg on Class Actions, § 11:53); *accord* 7B Charles Alan Wright, Arthur W. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1797.6 (3d ed. 2010) (noting that "courts have approved notices that did not contain some of the precise details of the settlement, such as the distribution or allocation plan, or the amount of attorney fees to be taken out, as long as sufficient contact information is provided to allow the class members to obtain more detailed information about those matters").

Here, the parties propose a robust notice program, to be administered by a well-regarded third-party claims administrator with significant experience in the administration of TCPA class actions. As noted above, the parties will submit a supplemental filing identifying the administrator and outlining the notice plan in detail.

In short, Defendant will provide the administrator with a list of the subject cellular telephone numbers and related information. The administrator will then use one or more third-party vendors to perform reverse look-ups of the telephone numbers to obtain potential class members' names and addresses, which will be updated through the National Change of Address

system. The National Change of Address system updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Subsequently, the administrator will, via U.S. mail, send each person identified through the look-up process a postcard notice with a detachable claim form. *See* Exhibit A to settlement agreement (proposed claim form).

In addition, the administrator will publish notice of the settlement in USA Today and the Wall Street Journal. This publication notice will buttress the direct mail notice.

Separately, the administrator will establish a dedicated settlement web site—www.JohnsonTCPAsettlement.com—through which class members will be able to review relevant documents, review the question-and-answer notice, *see* Exhibit E to the settlement agreement (proposed question and answer notice), and submit claims.

Finally, the administrator will establish a toll-free phone number through which class members can request additional information, have questions about the settlement answered, and submit claims.

Accordingly, the notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process to object to, or to be excluded from, the class, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding class counsel's request for an award of attorneys' fees and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries and obtain additional information. *See* Fed. R. Civ. P. 23(c)(2)(B).

**Conclusion**

Plaintiffs respectfully request that this Court enter their proposed order to which Defendant agrees, and (1) preliminarily certify the settlement class, (2) conditionally approve the settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (3) confirm Mr. Johnson's appointment as a class representative, and appoint Ms. Toure and Mr. Heard as class representatives, (4) confirm Plaintiffs' counsel's appointment as class counsel, (5) approve the proposed notice program as the best practicable under the circumstances that satisfies due process and Rule 23, (6) set a date for a final approval hearing, and (7) set deadlines for class members to submit claims for compensation, and to object to or exclude themselves from the settlement.

Date: December 23, 2016                    GREENWALD DAVIDSON RADBIL PLLC

                                           /s/ Aaron D. Radbil
                                           Aaron D. Radbil
                                           106 East Sixth Street, Suite 913
                                           Austin, Texas 78701
                                           Phone: (512) 322-3912
                                           Fax: (561) 961-5684
                                           aradbil@gdrlawfirm.com

                                           Michael L. Greenwald
                                           James L. Davidson
                                           Jesse S. Johnson (*pro hac vice*)
                                           5550 Glades Rd., Suite 500
                                           Boca Raton, Florida 33431
                                           Phone: (561) 826-5477
                                           Fax: (561) 961-5684
                                           mgreenwald@gdrlawfirm.com
                                           jdavidson@gdrlawfirm.com
                                           jjohnson@gdrlawfirm.com

                                           Class Counsel

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was electronically filed on December 23, 2016, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

_/s/ Aaron D. Radbil_
Aaron D. Radbil