**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| RANDY JOHNSON, on behalf of himself and others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 1:15-cv-0716-LJM-MJD |
| NAVIENT SOLUTIONS, INC, formerly known as SALLIE MAE, INC., now known as Navient Solutions, LLC, | |
| Defendant. | |
| ------------------------------------------------------- | |
| SHELLY TOURE and TONY HEARD, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | Case No. 1:17-cv-00071 LJM-TAB |
| v. | |
| NAVIENT SOLUTIONS, INC, formerly known as SALLIE MAE, INC., now known as Navient Solutions, LLC, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

**Table of Contents**

Introduction.................................................................................................................... 1

Argument ....................................................................................................................... 1

   I.   Class counsel's request for attorneys' fees in the amount of one-third of the settlement fund, after deducting litigation and administration-related costs and expenses, is appropriate and justified. ............................................................................................................ 1

      A.   Class counsel faced a significant risk of non-payment in this matter. ............................ 3

      B.   Class counsel's performance was exceptional. ................................................. 7

      C.   A great deal of work was necessary to resolve this action............................................ 10

      D.   The stakes of this case support class counsel's market rate request. ............................ 11

      E.   Data from similar cases shows that class counsel's request for attorneys' fees reflects the market rate. ................................................................................................ 11

      F.   In the event this Court determines the market rate to be less than one-third of the settlement fund, class counsel is entitled to a risk multiplier. ................................. 14

   II.   Plaintiffs' requests for incentive awards are appropriate and justified. ............................ 16

   III.  Class counsel's request for reimbursement of litigation costs and expenses is appropriate and justified. ............................................................................................................ 18

Conclusion .................................................................................................................... 19

**Table of Authorities**

**Cases**

*Allen v. JPMorgan Chase Bank, N.A.*,
    No. 13-cv-8285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015) ………………….………………13

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ……………………………18

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) ……………….…………15

*Balschmiter v. TD Auto Fin. LLC*,
    303 F.R.D. 508 (E.D. Wis. 2014) …………………………...…………………………..6

*Burkholder v. City of Ft. Wayne*,
    750 F. Supp. 2d 990 (N.D. Ind. 2010) …………………………...…………………14

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015), *as amended* (Apr. 28, 2015) …………..…………………6

*Campbell v. Advantage Sales & Mktg. LLC*,
    No. 1:09-CV-01430-LJM, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) …..…………13

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016) ………………...………………………5

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
    No. 1:07-cv-5456, Dkt. No. 424 (N.D. Ill. Oct. 21, 2011) ……………….…………13

*Charvat v. Allstate Corp.*,
    29 F. Supp. 3d 1147 (N.D. Ill. 2014) …………………………………………………3

*City of Greenville v. Syngenta Crop Prot., Inc.*,
    904 F. Supp. 2d 902 (S.D. Ill. 2012) …………………………….…………………12

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    No. 1:04-CV-3066-JEC, 2008 WL 11234103 (N.D. Ga. Mar. 4, 2008) ….....………..11

*Connor v. JPMorgan Chase Bank*,
    No. 10 CV 1284 DMS BGS (S.D. Cal.) …………………………..………………………8

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ………………………………..………………………16, 18

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ……….....…...........…2, 18

*Cummings v Sallie Mae*,
    No. 1:12-cv-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) …………....…..........…........13

*Damasco v. Clearwire Corp.*,
    662 F.3d 891 (7th Cir. 2011) ……………………………………...….......................5

*Desai v. ADT Sec. Servs., Inc.*,
    No. 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) ……………..................…13

*Duke v. Bank of Am., N.A.*,
    No. 5:12-cv-04009-EJD (N.D. Cal.) …………………………...…...................…..8

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) …………………………….…………….....................15

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ……………………………...……..........................12

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) …………………………..…........................…12

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016) …………………………………..…...............…7

*Goldsmith v. Tech. Solutions Co.*,
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ……………...............12

*Green v. DirecTV, Inc.*,
    No. 10-117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010)…………………...............…..3

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
    No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) ……………..….................13

*Hageman v. AT&T Mobility LLC*,
    No. 1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) …………….......................13

*Hanley v. Fifth Third Bank*,
    No. 1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) ………..…...................13

*Heekin v. Anthem, Inc.*,
    No. 1:05-CV-01908-TWP, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ……9, 12, 13, 14

*Holtzman v. CCH*,
No. 1:07-cv-7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) …………………………………..13

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) …………………………………….………………*passim*

*In re Capital One Tel. Consumer Prot. Act Litig.*,
No. 12-cv-10064, MDL No. 2416 (N.D. Ill.) …………………………….…………………..8

*In re Guidant Corp. ERISA Litig.*,
No. 05–1009, Dkt. No. 194 (S.D. Ind. Sept. 10, 2010) …………………..…………………14

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) …………………………………..……………19

*In re Lithotripsy Antitrust Litig.*,
No. 98 C 8394, 2000 WL 765086 (N.D. Ill. June 12, 2000) ……………….…………12

*In re Ready–Mixed Concrete Antitrust Litig.*,
No. 05–00979, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) ………………………14

*In re Ready–Mixed Concrete Antitrust Litig.*,
No. 05–00979, Dkt. 732 (S.D. Ind. Mar. 31, 2009) ………………………………14

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) …………………………………………………18

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) …………………………………..………………*passim*

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) ………………………………………….……………15

*Jones v. I.Q. Data Int'l, Inc.*,
No. 1:14-CV-00130-PJK, 2015 WL 5704016 (D.N.M. Sept. 23, 2015) ……………18

*Karhu v. Vital Pharm., Inc.*,
621 F. App'x 945 (11th Cir. 2015) ……………………………..………………6

*Killingsworth v. HSBC Bank Nevada, N.A.*,
507 F.3d 614 (7th Cir. 2007) ……………………………………………………7

*Kitson v. Bank of Edwardsville*,
No. CIV. 08-507-GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ………..…………14

*Kolinek v. Walgreen Co.*,
 311 F.R.D. 483 (N.D. Ill. 2015) ……………………………….…………………2, 3, 11

*Locklear Elec., Inc. v. Norma L. Lay*,
 No. 3:09-cv-00531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010) …………….………………13

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
 No. 09-CV-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ……………9

*Malta v. Fed. Home Loan Mortg. Corp.*,
 No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ……………..……………8

*Markos v. Wells Fargo Bank, N.A.*,
 No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ………………8, 17

*Martin v. Dun & Bradstreet, Inc.*,
 No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) …………………….…………13

*Matter of Cont'l Ill. Sec. Litig.*,
 962 F.2d 566 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ……… 1, 15

*McManus v. Sturm Foods Inc.*,
 292 F.R.D. 606 (S.D. Ill. 2013) …………………………………………………6

*Meyenburg v. Exxon Mobil Corp.*,
 No. 3:05-cv-15-DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) ………….…………12

*Mullins v. Direct Digital, LLC*,
 795 F.3d 654, 661-63 (7th Cir. 2015) ……………………….…………………….6

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
 311 F.R.D. 688 (S.D. Fla. 2015) ……………………………………………..8

*Pavlik v. FDIC*,
 No. 10 C 816, 2011 WL 5184445 (N.D. Ill. Nov. 1, 2011) ……………..……………..13

*Picchi v. World Fin. Network Bank*,
 No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) …………………………7

*Prater v. Medicredit, Inc.*,
 No. 14-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) …………..………………8, 18

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
 No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) …………..…………12, 14

*Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Div. St., Inc.*,
No. 11 C 6753, 2015 WL 638522 (N.D. Ill. Feb. 13, 2015) ………………………………6

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) …………………………………….………………13

*Silver v. Pa. Higher Educ. Assistance Agency*,
No. 14-CV-0652-PJH, 2016 WL 1258629 (N.D. Cal. Mar. 31, 2016) ………..………..7

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) ……………………………………..……………………14

*Soto v. The Gallup Org.*,
No. 13-cv-61747, Dkt. No. 95 (S.D. Fla. Nov. 24, 2015) ………..……………………13

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) …………………….………………4

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*,
No. 12-174, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) ………………………………..8

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) …………………………………………………………..15

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) ……………………………..……………………………12

*Vendervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014) …………………….…………………………13

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
274 F.R.D. 229 (S.D. Ill. 2011) …………………………………………………………6

*Wilkins v. HSBC Bank Nev., N.A.*,
No. 14-cv-190 (N.D. Ill.) …………………………………….…………………………8

*Will v. Gen. Dynamics Corp.*,
No. CIV. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ………………12, 14

*Williams v. Rohm & Haas Pension Plan*,
No. 404CV0078SEBWGH, 2010 WL 2291872 (S.D. Ind. June 1, 2010) ……………..2

**Regulatory Filings**

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,
Broadnet Teleservices LLC Petition for Declaratory Ruling, et. al.*,

CG Docket No. 02-278, Declaratory Ruling, FCC 16-72 (July 5, 2016) …………………3

National Employment Network Association Petition for Expedited Declaratory Ruling,
  CG Docket No. 02-278 (filed Aug. 19, 2014) …………………………………………………3

Petition of Broadnet Teleservices LLC for Declaratory Ruling,
  CG Docket No. 02-278 (filed Sept. 16, 2015) …………………………………………………..3

RTI International Petition for Expedited Declaratory Ruling,
  CG Docket No. 02-278 (Sept. 29, 2014) ……………………………..………………………3

**Rules**

Fed. R. Civ. P. 23(h) ………………………………………………………………..…………19

**Introduction**

Class counsel, with Plaintiffs' assistance, obtained a non-reversionary cash settlement fund of approximately $19.74 million to compensate 429,893 class members. This is a terrific result considering the very real and significant risks associated with litigating Plaintiff's claims—case-specific risks above and beyond those typically associated with class actions, which stemmed from looming changes in law and regulation.

To be sure, on a per-class member basis, the approximately $46 per-class member settlement value eclipses that of many recent and analogous Telephone Consumer Protection Act ("TCPA") settlements by multiples. And the expected per-claimant recovery—which will exceed $500 assuming a typical claims rate associated with TCPA class actions—is exceptional given that a federal district court very recently characterized a $24 per-claimant recovery in a similar TCPA class action as an "excellent result."

Against this backdrop, this Court should award class counsel attorneys' fees at the market rate, as well as reimbursement of litigation costs and expenses, and it should award incentive awards to Plaintiffs for their service as class representatives.

**Argument**

**I.  Class counsel's request for attorneys' fees in the amount of one-third of the settlement fund, after deducting litigation and administration-related costs and expenses, is appropriate and justified.**

"The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992). "In other words[,] the object is to simulate the market where a direct market determination is infeasible [such as in a class action]." *Id.*

1

In determining the market rate a "district court must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). Because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low)." *Id.* Indeed, "[t]his is what happens in actual markets." *Id.* "[Individual lawyers and clients] strike their bargains before work begins." *Id.*

In the class action context, determining the market rate begins with the understanding that "given the opportunity . . . class members and Plaintiff's counsel would [bargain] for" a contingency fee. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *see also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) ("had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) ("As other courts have observed, the normal practice in consumer class actions is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery."). Not surprising, then, is that "the preference . . . of the Seventh Circuit in other cases for calculating awards in common fund cases [is to do so] based on a percentage of the common fund." *Williams v. Rohm & Haas Pension Plan*, No. 404CV0078SEBWGH, 2010 WL 2291872, at *1 (S.D. Ind. June 1, 2010).

With this in mind, the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work

2

necessary to resolve the litigation, and in part on the stakes of the case." *In re Synthroid Mktg. Litig.*, 264 F.3d at 721. Also important is "data from similar cases." *Kolinek*, 311 F.R.D. at 501 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 719).

### A.  Class counsel faced a significant risk of non-payment in this matter.

Present at the outset of this matter, and persisting throughout this case, were a number of risks—above and beyond those normally associated with litigating TCPA class actions[1]—from which non-payment could have ensued. First, as a result of petitions filed with the Federal Communications Commission ("FCC") in 2014 and 2015—two of which pre-dated Mr. Johnson's class action complaint[2]—the FCC clarified in July 2016 that agents of the federal government are not liable for violations of the TCPA stemming from autodialed calls placed on its behalf. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Broadnet Teleservices LLC Petition for Declaratory Ruling, et. al.*, CG Docket No. 02-278, Declaratory

---

[1]   For example, like TCPA defendants typically do, Defendant contended from the very beginning of this matter that Mr. Johnson and "persons that Plaintiff purports to represent are barred, in whole or in part, from maintaining the alleged claims because they provided 'prior express consent' within the meaning of the TCPA for the calls allegedly made to their phone numbers." *Johnson v. Navient Solutions, Inc.* ("*Johnson*"), No. 1:15-cv-0716-LJM-MJD, Doc. 8 at 8. Notably, Defendant presented support for its position through filings in connection with summary judgment proceedings. *See Id.*, Doc. 142 at 6-7, 15, 19-21. And since prior express consent is a defense to a claim under the TCPA, s*ee, e.g., Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014), Defendant's contention, if accepted, could very well have resulted in a finding of no liability, especially in light of the facts underlying Mr. Johnson's claims. *Accord In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 805 (specifically noting the risk that "it was quite possible that the discovery may have revealed that many class members acquiesced to receiving calls on their cell phones when they agreed to their cardholder agreements with Capital One"); *Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *3, *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against a TCPA plaintiff because she "consented to the automated call made to her cellular phone").

[2]   *See* National Employment Network Association Petition for Expedited Declaratory Ruling, CG Docket No. 02-278 (filed Aug. 19, 2014); RTI International Petition for Expedited Declaratory Ruling, CG Docket No. 02-278 (Sept. 29, 2014); Petition of Broadnet Teleservices LLC for Declaratory Ruling, CG Docket No. 02-278 (filed Sept. 16, 2015).

Ruling at 5, FCC 16-72 (July 5, 2016). According to Defendant, this means that because it made the subject telephone calls on behalf of, and as an agent of, the federal government, Defendant is immune from liability resulting from the calls at issue. *See Johnson*, Doc. 142 at 24-30. Considering this, and given the petitions pending before the FCC at the time Mr. Johnson initiated his action, the likelihood of non-payment just before this matter began, and at the time of settlement, was substantial.

In fact, the court in *In re Capital One Tel. Consumer Prot. Act Litig.*, noted a risk of non-payment given "petitions before the FCC urging the FCC to (1) revise the TCPA's definition of 'automatic telephone dialing system' to exclude dialers like those used by Capital One, and (2) provide a safe harbor for all calls that Capital One inadvertently made to wrong numbers." 80 F. Supp. 3d at 805. The court went on to explain that "[c]onsequently, the longer this litigation were to continue, the longer Plaintiffs would be exposed to the possibility that the FCC would take action that might extinguish Plaintiffs' claims." *Id*.

Second, before this matter began, the Supreme Court granted a petition for writ of certiorari in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) (petition granted on April 27, 2015). The question in *Spokeo* was whether an alleged violation of a federal statute, without any concrete harm, confers Article III standing. *Id*. at 1544. And although the Supreme Court ultimately ruled in a manner that allowed this Court to conclude that Mr. Johnson has standing to pursue his claims, *see Johnson*, Doc. 47 at 3, if the Supreme Court would have held otherwise Plaintiffs would have lacked Article III standing to proceed with this matter. Consequently, at the inception of this case the possibility of non-payment stemming from an inability to adequately establish Article III standing was significant.

4

Third, at the time Mr. Johnson filed his class action complaint, the Seventh Circuit's opinion in *Damasco v. Clearwire Corp.* controlled the manner in which district courts treated offers of judgement to named plaintiffs only. *See* 662 F.3d 891, 895 (7th Cir. 2011), *overruled by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015). In short, a defendant could moot a class action by offering a named plaintiff complete individual relief prior to the filing of a motion for class certification. *Id.* at 896.

And while the Seventh Circuit reversed itself in August 2015, the Supreme Court, in *Campbell-Ewald Co. v. Gomez*, subsequently re-opened the door for defendants to moot class actions by tendering complete individual relief—as opposed to merely offering it—to named plaintiffs. *See* 136 S. Ct. 663, 672 (2016), *as revised* (Feb. 9, 2016); *accord id.* at 684 (Alito, J., dissenting) ("I am heartened that the Court appears to endorse the proposition that a plaintiff's claim *is* moot once he has 'received full redress' from the defendant for the injuries he has asserted."). Accordingly, the state of the law as of the date that Ms. Toure and Mr. Heard filed their class action complaint was such that Defendant could have attempted to moot Plaintiffs' claims by tendering complete individual relief to them.

Of note, Defendant attempted to do just that with respect to Mr. Johnson, *see Johnson*, Doc. 119-2, but failed, in large part, because it did not ask this Court to enter judgment against itself. *See id.*, Doc. 122 at 3. Given, therefore, controlling law when Mr. Johnson, and Ms. Toure and Mr. Heard, filed their class action complaints, the possibility of non-payment upon initiating Plaintiffs' claims was a very real concern.

Fourth, at the time that Mr. Johnson filed his class action complaint, the trend in the law regarding Rule 23 and its implicit ascertainability requirement was that to certify a class a named plaintiff was required to demonstrate "a reliable and administratively feasible mechanism for

determining whether putative class members fall within the class definition." *See Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015); *see also Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015) ("In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified."). This standard would have made Mr. Johnson's proposed class more difficult to certify, as evidenced by decisions from district courts in the Seventh Circuit denying certification requests in TCPA class actions based on a lack of ascertainability. *See, e.g.*, *Rosen Family Chiropractic, S.C. v. Chi-Town Pizza on Div. St., Inc.*, No. 11 C 6753, 2015 WL 638522, at *6 (N.D. Ill. Feb. 13, 2015); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 525 (E.D. Wis. 2014); *McManus v. Sturm Foods Inc.*, 292 F.R.D. 606, 617 (S.D. Ill. 2013); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011).

And that just two months after Mr. Johnson initiated this action the Seventh Circuit specifically rejected the "recent expansion of ascertainability," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661-63 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161, 194 L. Ed. 2d 175 (2016), does not change the fact that Mr. Johnson's path to class certification was largely uphill at the time he filed his class action complaint. Correspondingly, the risk of non-payment was considerable. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 805 (acknowledging as a risk of non-payment that "at the outset of the litigation there was a serious question whether the Plaintiffs' claims could meet Rule 23's manageability requirement").

What's more, in addition to the risks present at the outset of this matter, while the parties were actively litigating this case Congress amended section 227(b)(1)(A)(iii) of the TCPA—the section on which Plaintiffs' claims rest—to exclude from its reach calls "made solely to collect a debt owed to or guaranteed by the United States." *See* Bipartisan Budget Act of 2015, PL 114-74,

November 2, 2015, 129 Stat 584. This posed an obvious problem for Plaintiffs given that Defendant collects federally guaranteed student loan debt. *See Johnson*, Doc. 100 at 7, 11.

Compounding this problem was a decision from the first federal court to address whether the 2015 amendment to the TCPA was retroactive, holding that the amendment applies retroactively. *See Silver v. Pa. Higher Educ. Assistance Agency*, No. 14-CV-0652-PJH, 2016 WL 1258629 (N.D. Cal. Mar. 31, 2016). Thus, although Plaintiffs believe that the *Silver* court's opinion is at odds with Seventh Circuit precedent—that a retroactive application is impermissible if it impairs preexisting substantive rights, *see, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 623 (7th Cir. 2007)—the 2015 amendment to the TCPA certainly presented a real risk that Plaintiffs would not prevail.

In sum, Plaintiffs faced a number of risks outside of their control, each of which could have put a complete end to this matter. These risks—which existed on top of ordinary risks associated with litigating any class action—stemmed from looming changes in law and regulation that made the legal landscape in which Plaintiffs litigated this matter extraordinarily uncertain. Consequently, at the beginning of this matter, and throughout the nearly two years of litigation that followed, class counsel faced an undeniable risk of nonpayment given the unpromising state of law and regulation controlling Plaintiffs' claims.

### B. Class counsel's performance was exceptional.

Despite the significant hurdles that stood in the way of a successful resolution to this matter, class counsel obtained an excellent result for Plaintiffs and the class. In particular, on a per-class member basis, the approximately $46 per-class member settlement value eclipses the value of many recent and analogous TCPA settlements by multiples. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227 (N.D. Ill. 2016) (just over $1.00 per-class member); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) (under $3.00 per

7

class member); *Prater v. Medicredit, Inc.*, No. 14-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) (just under $10 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) (under $4.00 per class member); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009-EJD (N.D. Cal.) (just over $4.00 per class member); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 DMS BGS (S.D. Cal.) (under $5.00 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) (under $5.00 per class member); *In re Capital One Tel. Consumer Prot. Act Litig.*, No. 12-cv-10064, MDL No. 2416 (N.D. Ill.) (under $5.00 per class member).

Moreover, assuming a claims rate of approximately 5%—which is typical in TCPA class actions—participating class members can expect recoveries exceeding $500, even after deducting the requested attorneys' fees, costs, expenses, and incentive awards from the common fund. This substantial recovery will be afforded to class members despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). In other words, the settlement provides class members significant monetary relief they would likely never have pursued on their own.

Finally, that each participating class member will receive hundreds of dollars is substantial in its own right. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL

416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—significantly less than what participating class members will receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

But this excellent result did not come easy. Rather, it was a direct product of class counsel's persistence and performance over the course of litigation that spanned nearly two years—a high-level summary of which is as follows.

In May 2014, Mr. Johnson filed his class action complaint against Defendant. *Johnson*, Doc. 1. Defendant then filed its answer and eleven affirmative defenses. *Id.*, Doc. 8. Subsequently, Defendant moved to stay Mr. Johnson's case due to then-pending Supreme Court cases, Mr. Johnson responded, *id.*, Doc. 45, and this Court denied Defendant's motion. *Id.*, Doc. 47.

The parties next conducted significant discovery, including Defendant's rolling production of over 20,000 pages of documents, as well as depositions of Defendant's designated representative, Defendant's expert, Mr. Johnson, and Mr. Johnson's expert. *Id.*, Doc. 156-1, ¶ 41.

Just prior to the close of discovery, Mr. Johnson filed his motion for class certification, *id.*, Doc. 75, Defendant responded, *id.*, Doc. 100, Mr. Johnson replied, *id.*, Doc. 119, and this Court granted Mr. Johnson's motion. *Id.*, Doc. 122. Together with its response to Plaintiff's motion for class certification, Defendant also filed its motion to strike the testimony of Mr. Johnson's expert, *id.*, Doc. 109, which this Court denied without prejudice. *Id.*, Doc. 122.

Defendant then filed with the Seventh Circuit its petition for leave to appeal this Court's order certifying the class, Case No. 16-8016, Dkt. No. 1, Mr. Johnson answered, *id.*, Dkt. No. 4, and the Seventh Circuit denied Defendant's petition. *Id.*, Dkt. No. 5.

Later, Mr. Johnson filed his motion for summary judgment, *Johnson*, Doc. 135, and Defendant responded. *Id.*, Doc. 142. Nearly simultaneously, Defendant filed its motion for summary judgment, *id.*, Doc. 136, and Plaintiff responded. *Id.*, Doc. 141.

During this period of condensed litigation, which was remarkably efficient,[3] the parties mediated Plaintiffs' claims on three separate occasions—once before Judge Dinsmore on May 17, 2016, in Indianapolis; once before the Hon. William Cahill (Ret.) of JAMS on August 19, 2016, in Washington, D.C.; and once before Judge Cahill on November 27, 2016, in Los Angeles. *Id.*, Doc. 156-1, ¶ 35. Only after weeks of negotiation following the third mediation, and with Judge Cahill's continued assistance, were the parties able to reach a settlement agreement. *Id.*

In short, despite Defendant's vigorous and second-to-none defense, Plaintiffs prevailed at every stage of this matter, before both this Court and the Seventh Circuit. And class counsel's performance ultimately resulted in an excellent recovery for Plaintiffs and the class—a result that did not materialize until class counsel succeeded in each of their accomplishments.

### C.  A great deal of work was necessary to resolve this action.

Class counsel performed significant work to achieve the result they obtained. In addition to their efforts noted above, class counsel's court-related work is summarily outlined by the dockets in Mr. Johnson's case, and Ms. Toure and Mr. Heard's case, which respectively show 164 and 37 entries. This, of course, does not account for, among other things, the months of investigation and work that class counsel performed leading up to the filing of Mr. Johnson's class action complaint. *See* Declaration of Aaron Radbil, attached as Exhibit A, ¶ 60. Nor does it factor in the work remaining to be done to bring this matter to a successful conclusion.

---

[3]     Throughout much of this case the parties both submitted monthly reports to Judge Dinsmore, and attended monthly telephone conferences with Judge Dinsmore, regarding the status of discovery. This kept the discovery and litigation processes moving, and resulted in very little, if any, downtime throughout this matter.

### D.  The stakes of this case support class counsel's market rate request.

The stakes of this case were high. Defendant faced a class action lawsuit for which it ultimately agreed to pay over $19.5 million to resolve. Hundreds of thousands of unnamed class members faced the risk of no recovery. And class counsel not only faced the risk of non-payment for the significant amount of time and expense they incurred in litigating this matter, but the "opportunity costs of turning down other lucrative clients." *Heekin v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) (Pratt, J.); *see also Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2008 WL 11234103, at *2 (N.D. Ga. Mar. 4, 2008) ("[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund.").

Moreover, many of the issues underlying this matter involved difficult and unsettled legal questions at the forefront of class action, constitutional, and consumer protection law. The stakes of this matter were therefore not simply financial, but legal in nature. And the outcome of this matter had consequences greater than those affecting only the parties to it. Accordingly, the stakes of this matter—both financial and legal—as well as the burdens associated with them, support class counsel's request for attorneys' fees.

### E.  Data from similar cases shows that class counsel's request for attorneys' fees reflects the market rate.

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek*, 311 F.R.D.

at 501 (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005)). In the Seventh Circuit, "the typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998); *see also Heekin*, 2012 WL 5878032, at *5 ("the Court finds there is support from other cases in this Circuit and nationally to support a percentage market rate of 33.3%") (collecting cases); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012) ("a contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price for legal services"); *Will v. Gen. Dynamics Corp.*, No. CIV. 06-698-GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) ("the normal rate of compensation in the market" is 33.33% of the common fund recovered); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards"); *Gaskill v. Gordon*, 942 F. Supp. 382, 388 (N.D. Ill. 1996) ("[T]he Court concludes that the professionals should recover 38% of the total fund available for distribution. This award reflects an increase of five percent over the court's original award of 33% and exceeds the range of most common fund fee awards."); *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) ("Thirty-three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients.").

And this does not differ when limited to TCPA class actions. *See, e.g.*, *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-cv-8285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33% inclusive of costs); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than 33 1/3%); *Cummings v Sallie Mae*, No. 1:12-cv-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) (awarding 33% inclusive of costs); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (awarding 33% inclusive of costs); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) (awarding 33% inclusive of costs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-5456, Dkt. No. 424 (N.D. Ill. Oct. 21, 2011) (awarding 33% plus costs); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010) (awarding 33 1/3% plus costs); *Holtzman v. CCH*, No. 1:07-cv-7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) (awarding 33% inclusive of costs).[4]

Not surprising, then, is this Court's finding that "[a] fee of [one-third of the maximum settlement payment] has been approved by a number of courts across the country in similar cases." *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-CV-01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (McKinney, J.) (collecting cases); *see, e.g.*, *Heekin*, 2012 WL 5878032, at *1, *5 (awarding 33.3% of a $90 million common fund, and noting that "the Court finds there is support from other cases in this Circuit and nationally to support a percentage market rate of 33.3%"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (approving class counsel's request for "precisely one-third of the" settlement fund); *Pavlik v. FDIC*, No. 10 C 816,

---

[4]       *Accord Soto v. The Gallup Org.*, No. 13-cv-61747, Dkt. No. 95 (S.D. Fla. Nov. 24, 2015) (awarding a fee of 33 1/3% inclusive of costs); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) (awarding a fee of 33 1/3% plus costs); *Prater*, 2015 WL 8331602, at *3 (awarding 33 1/3% plus costs); *Hageman v. AT&T Mobility LLC*, No. 1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) (awarding 33% inclusive of costs); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33%).

2011 WL 5184445, at *4 (N.D. Ill. Nov. 1, 2011) ("the Court finds that Plaintiffs' counsel are entitled to attorneys fees in the amount of 33 1/3% of the common fund"); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (awarding 33.3% of the common fund); *In re Guidant Corp. ERISA Litig.*, No. 05–1009, Dkt. No. 194, slip op. at 2 (S.D. Ind. Sept. 10, 2010) (McKinney, J.) (awarding 38% of the common fund); *In re Ready–Mixed Concrete Antitrust Litig.*, No. 05–00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (Barker, J.) (awarding 33.3% of the common fund); *Will*, 2010 WL 4818174, at *4 (awarding 33 1/3% of the [$15.15 million monetary] settlement obtained, and "agree[ing] that a one-third fee is consistent with the market rate"); *Kitson v. Bank of Edwardsville*, No. CIV. 08-507-GPM, 2010 WL 331730, at *3 (S.D. Ill. Jan. 25, 2010) (awarding class counsel "one-third of the $3,415,000 total value of the Common Fund"); *Retsky Family Ltd. P'ship*, 2001 WL 1568856, at *4 (granting class counsel's request in the amount of "one-third of the [$14 million] common fund").

Also relevant is this Court's acknowledgment of "evidence of numerous cases in which common funds over $50 million resulted in 33.3% fee awards." *Heekin,*2012 WL 5878032, at *5; *accord In re Ready–Mixed Concrete Antitrust Litig.*, No. 05–00979, Dkt. 732, slip op. at 13 (S.D. Ind. Mar. 31, 2009) (citing data that fee awards of 30% or more were granted in 11 out of 16 cases where the class recovery was less than $100 million).

### F.  In the event this Court determines the market rate to be less than one-third of the settlement fund, class counsel is entitled to a risk multiplier.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). For instance, "if the market-determined fee for a sure winner were $1 million the market-determined fee for

handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011).

"[T]he need for such [a risk] adjustment is particularly acute in class action suits [because] [t]he lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (quoting *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 569). As such, "a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services." *Id.* (internal quotation omitted); *see also Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) (finding an abuse of discretion where the district court refused to account "for the risk of loss").

Here, class counsel entered into a contingent attorneys' fee agreement with Plaintiffs. *See* Ex. A, ¶ 57. In particular, class counsel and Plaintiffs agreed that should this matter be resolved on a class-wide basis, class counsel may apply to this Court for an award of attorneys' fees. *Id.*, ¶ 58. The agreement also detailed that if a common fund is created, class counsel would seek a percentage of the fund not to exceed 35%. *Id.* Class counsel, therefore, had no sure source of compensation for their services in this matter, and are accordingly entitled to a risk multiplier.

To be clear, class counsel submit that the market rate for class actions like this one is one-third of the common fund recovered, after deducting litigation and administration expenses—no matter how courts arrive at the one-third figure. That is, for common funds up to $20 million, whether a simple one-third of the settlement fund is appropriate, *see supra* Section I.E, or whether a hybrid percentage-multiplier method should be used, *see Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017) ("Taking the award structure in *Gehrich*, *Wilkins*, *Craftwood*, and *Capital One* as a guide (30% for the first band, 25% for the

15

second band, 20% for the third band, 15% for the fourth band), the Court applies a six-point premium to the first band, a five-point premium to the second band, a four-point premium to the third band, and a three-point premium to the fourth band. Thus, the Court awards class counsel 36% of the first $10 million ($3.6 million), 30% of the second $10 million ($3 million), 24% of the band from $20 million to $56 million ($8.64 million), and 18% of the remainder."), the end result is that for a $20 million common fund, one-third of the fund is the market rate for an attorneys' fee award.

 If, however, this Court finds the market rate to be lower, class counsel seek a risk multiplier not to exceed either 6%, or a lesser percentage that would result in an attorneys' fee award that equals one-third of the common fund, after deducting litigation and administration-related costs and expenses. *Accord In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 807 (applying a six percent risk premium to the thirty-percent attorneys' fee award).[5]

## II. Plaintiffs' requests for incentive awards are appropriate and justified.

Incentive awards "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d at 722. "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Mr. Johnson took exceptional steps to protect the interests of the class, and spent considerable time pursuing the claims underlying this matter. To start, Mr. Johnson has been an

---

[5]   For the sake of example, should this Court decide that the appropriate market rate is 30% of the common fund, after deducting litigation and administration-related costs and expenses, class counsel would seek a risk enhancement of 3 1/3%.

active participant in this matter who not only read all pertinent filings with this Court, but conducted his own independent research along the way. *See Johnson*, Doc. 75-6 at 9 (Q. Have you read any of the pleadings related to this case? A. Yes, I have. I have read up on the Telephone Consumer Protection Act that was enacted by Congress in 1991. Q. Okay. What else? A. I've read Navient's motion to stay this case, which was denied by the judge. I've read the original complaint filled out by these gentlemen. And I've read the expert report from the outside counsel that they hired to collect data, I think, on the number of calls, not just from me, but other people in the country. I've read pretty much everything that's been available for me to read.). As well, Mr. Johnson frequently communicated with class counsel by telephone and email. *See* Ex. A, ¶ 66. He also sat for a deposition, and participated, in person, in a settlement conference before this Court. *See id.*, ¶ 67.

Moreover, Mr. Johnson turned down an individual offer from Defendant that would have provided him far more money than he now seeks. *See Johnson*, Doc. 119-2 at 2 (offering Mr. Johnson $90,000 to resolve this matter without any relief to the class). Mr. Johnson would therefore have recovered much more than the amount he now requests if he would have made the decision to abandon the class for his own financial gain. Mr. Johnson did not do so, to his own financial detriment. Mr. Johnson's request for an incentive award is accordingly justified. *See Markos*, 2017 WL 416425, at *3 ("The Court further approves a service award of $20,000 for each named Plaintiff and specifically finds such amount to be reasonable in light of the service performed by each Plaintiff for the class. Each of the named Plaintiffs rejected a Rule 68 offer of judgment that would have compensated them more than this service award, and therefore each put the class's interests above his or her own.").

Similarly, Ms. Toure and Mr. Heard actively participated in this matter. *See* Ex. A, ¶ 69. They also agreed, prior to initiating their claims, not to advance their individual interests over or to the detriment of the interests of the class. *See id.*, ¶ 60.

For these reasons, Mr. Johnson seeks an incentive award of $25,000, and Ms. Toure and Mr. Heard respectively seek incentive awards of $5,000. These amounts are in line with incentive awards affirmed by the Seventh Circuit and provided by district courts in analogous matters. *See Cook*, 142 F.3d at 1016 (affirming the district court's incentive award of $25,000 to the named plaintiff); *Craftwood Lumber Co.*, 2015 WL 1399367, at *6 (awarding $25,000 to the named plaintiff and noting that "an award of $25,000 is in line with incentive fees awarded by other courts in this district"); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *16-17 (N.D. Ill. Feb. 28, 2012) (awarding $25,000 incentive awards to each of the seven named plaintiffs).[6]

### III. Class counsel's request for reimbursement of litigation costs and expenses is appropriate and justified.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) (internal quotation omitted). Here, class counsel incurred $51,293.04 in costs and expenses in connection with this matter, including travel expenses, mediation costs, expert costs, deposition costs, filing and admission fees, and other necessary expenses. *See* Ex. A, ¶ 75 (detailing litigation costs and expenses incurred). Importantly, the categories of expenses for which class counsel seek reimbursement are the type of expenses

---

[6]     *See also Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award to a named TCPA plaintiff from a $1 million common fund); *Prater*, 2015 WL 8331602, at *3 ($20,000 incentive award to a named TCPA plaintiff from a $6.75 million common fund).

routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.") (emphasis added). Thus, this Court should approve class counsel's reimbursement for litigation costs and expenses incurred in this matter.

## Conclusion

Class counsel respectfully request that this Court grant their requests for (1) attorneys' fees in the amount of one-third of the settlement fund, after deducting litigation and administration-related costs and expenses, (2) reimbursement of $51,293.04 in litigation costs and expenses, and (3) a $25,000 incentive award for Mr. Johnson, and $5,000 incentive awards for Ms. Toure and Mr. Heard.

19

Date: April 22, 2017                    GREENWALD DAVIDSON RADBIL PLLC

                                        /s/ Aaron D. Radbil
                                        Aaron D. Radbil
                                        106 East Sixth Street, Suite 913
                                        Austin, Texas 78701
                                        Phone: (512) 322-3912
                                        Fax: (561) 961-5684
                                        aradbil@gdrlawfirm.com

                                        Michael L. Greenwald
                                        James L. Davidson
                                        Jesse S. Johnson
                                        5550 Glades Road, Suite 500
                                        Boca Raton, Florida 33431
                                        Phone: (561) 826-5477
                                        Fax: (561) 961-5684
                                        mgreenwald@gdrlawfirm.com
                                        jdavidson@gdrlawfirm.com
                                        jjohnson@gdrlawfirm.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on April 22, 2017, via the

Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

                                        /s/ Aaron D. Radbil
                                        Aaron D. Radbil